No. 36,569

O. R. Hoffman, *Appellee*, v. Cudahy Packing Company, *Appellant*.

(167 P. 2d 613)

Opinion filed April 6, 1946.

J. O. Emerson, of Kansas City, argued the cause, and Fred Robertson and Edward M. Boddington, both of Kansas City, were on the briefs for the appellant.

David W. Carson, of Kansas City, argued the cause, and David F. Carson, of Kansas City, was on the briefs for the appellee. ·

The opinion of the court was delivered by

HOCH, J.: This was a common law action to recover damages for personal injuries. The defendant company appeals from an order striking out parts of its answer.

The question presented is, whether under the allegations of fact stricken from the answer, the plaintiff's injury was compensable, from the defendant, under the workmen's compensation act. If so compensable, such remedy was exclusive and a common law action for damages founded on negligence would not lie (Bailey v. Mosby Hotel Co., 160 Kan. 258, 160 P. 2d 701, and cases cited on page 259).

The allegations of the petition need be noted only briefly. Plaintiff alleged that on the day on which the injury occurred he "was employed by the telephone company" and "was making repairs for an extension bell for the telephone company on the place of business and within the premises of the Cudahy Packing Company." He alleged further that in order to make these repairs it was necessary for him to stand on a platform furnished by the defendant for that purpose, and that while he was "at work on the extension bell for the telephone company" one of defendant's employees, while moving a truck along a track on which the platform had been placed, struck the platform, knocking the plaintiff from the platform and injuring him. The allegations as to defendant's negligence and as to the nature of plaintiff's injury need not be recited. Recovery was sought in the sum of $3,000.

In its answer the defendant set up four defenses. In the first defense, defendant admitted that the plaintiff was repairing a bell on its premises and that the person who was moving the truck was its employee and engaged in the performance of his work. Aside from these admissions, the first defense consisted in most part of a general denial. The allegations of the second and third defense need not be recited. We come to the fourth defense which is the one here involved.

.Preliminary procedural steps taken may be briefly noted. Plaintiff first moved to strike out the fourth defense in its entirety. This motion was overruled and the plaintiff was given time in which to plead further or to file a motion to strike directed to specific parts of the answer. The plaintiff's later motion to strike portions of the fourth defense is somewhat confusing, but it may be said that it covered all the allegations of the fourth defense which are material here. The trial court regarded the motion as one to strike the substance of the fourth defense, and we think properly so. The motion was then treated as a demurrer and will be so treated here. The question then is whether under the facts alleged in the fourth defense and all reasonable inferences to be drawn therefrom, action would lie against the defendant company under the compensation act. .

Before summarizing the allegations which were stricken from the answer, we take note of appellee's contention that the appellant is bound by certain admissions made in the first defense set up in its answer and that such admissions are inconsistent with the fourth defense, the point being that in the first defense the defendant did not deny that the plaintiff was employed by the telephone company at the time of the accident, and "was making repairs for an extension bell for the telephone company." The contention calls for only brief comment. In the first place, the fact that the plaintiff was an employee of the telephone company and was fixing the bell as such employee would not necessarily relieve the defendant packing company from liability under the workmen's compensation act. We would still have to determine whether there was liability under the provisions of section 44-503 of the act, presently to be considered. In the next place, there was no motion to require the defendant to elect which of the four defenses it would rely upon and it would have been entitled, if it chose to do so, to rely entirely upon the fourth defense and disregard the others. Furthermore, a demurrer to the fourth defense does not raise the issue of inconsistency of different defenses pleaded. In the early case of *Larimer v. Kelley*, 10 Kan. 298, 306, it was said, in answer to a contention similar to the one made here by appellee:

"If counsel mean to claim that it is insufficient because contradictory to the second and verified defense, and that contradictory defenses are not tolerated, this answer is complete; such objection cannot be raised by demurrer. This question on demurrer is whether this defense be sufficient; not

whether it contradicts or is inconsistent with some other." (See, also, *Herd v. Estes,* 154 Kan. 316, 321, 118 P. 2d 575.)

The salient allegations of fact to be considered may be summarized as follows: At the time the alleged accident occurred and for a long time prior thereto, the defendant had been carrying on for profit upon the premises where the injury happened, a meat packing house, and was operating therein a factory within the meaning of the workmen's compensation act, and in so doing was using electric power in connection with the manufacturing and processing of meat and other products. At the time of the alleged accident, the plaintiff was performing work which was a part of and incidental to the defendant's trade and business which it had undertaken to perform; at the time of the accident and continuously for more than a month prior thereto, defendant had in its employ in the meat packing house about 1,500 workmen and was and had been operating under the act; the premises where defendant's business was being carried on consisted of several acres of ground and many buildings, and the place where it was alleged the accident occurred was a very large room in which more than a hundred employees were working under the direction of a foreman and assistant foreman. This large room was largely filled with machinery operated with electricity and in one end of the room was a small office for the use of the foreman and his assistant. In the performance of their duties the foreman and his assistant were required to be in various parts of this large room, and in order that they might be called to the small office room in connection with their duties, the defendant had installed upon one side of the large room an extension bell operated by electricity and used for the purpose of calling the foreman and his assistant to the office to answer telephone calls or to transact other business of the defendant; the plaintiff was repairing "the said extension bell" at the time of his alleged accident; *"the said bell was necessary, useful, and proper* for the defendant in order for it *to carry on its said business efficiently and the defendant had at all times undertaken to keep and have the same kept in running order.* The said bell was connected by wires to another part of the defendant's said premises where the bell could be activated by an employee of the defendant when necessary to call in the foreman or his assistant"; *defendant's meat packing plant included many machines mostly operated by electric power,* and contained a great deal of

electric wiring, switches, lighting equipment *"and various extension bells similar to the one which the plaintiff was repairing* which had been installed by the defendant *and which the defendant in the carrying on of its said business undertook to keep in repair and working order"*; at the time of the accident and for many years prior thereto *the defendant had kept in its constant employ eight or nine expert electricians for the purpose of installing, repairing, and keeping in operation all of the electrical appliances on the premises used in the operation of the business;* these electricians were at the time of the alleged accident and for many years prior thereto engaged in the work of repairing and keeping in order these electrical appliances and extension bells, and were capable of repairing and keeping in working order this particular bell; instead of maintaining this particular bell in repair by its permanent employees, *the defendant had "contracted with the telephone company,* for which the plaintiff alleges he was working, *to keep that particular extension bell repaired and in order"; in conformity with this contract the defendant had requested the telephone company to make needed repairs upon this particular bell which it,* the defendant, had *"undertaken to keep and to have kept in working order . . . [as] a part of the [operation of its] trade and business";* the premises *involved,* including the place where the accident occurred *were at the time of the accident and at all times prior thereto "under the control and management of the defendant in its said meat packing house business."* In carrying on the business it was necessary to have, and *the defendant did at all times have moving platform ladders* such as. that upon which the plaintiff was working when the accident occurred, *and defendant admits that it furnished the moving platform ladder to the plaintiff.* (Italics supplied.)

At the outset it may be well to note that we are dealing only with the facts as alleged, and are not anticipating what facts appellant might or might not be able to prove. Under the well-established rule applicable to demurrers, all facts well pleaded by the defendant and all inferences reasonably drawn therefrom are to be accepted as true.

Another rule of construction here pertinent is that the workmen's compensation act is to be liberally construed. This rule of liberal construction is most frequently invoked by employees who have suffered injury and are seeking their remedy under the act. But

no different rule of construction can be adopted where an injured workman for reasons which he regards sufficient seeks a remedy outside the compensation act. In other words, in determining whether the alleged facts make the injury compensable under the act, we have precisely the same issue we would have if the plaintiff were setting up the same facts in an action to recover under the compensation act, and the company was defending on the grounds that the facts as alleged did not make the injury compensable under the act. The same rule as applied to the same facts must govern, whether invoked by the employee or by the employer.

The determining questions are: (1) Was the maintenance of the extension bell a part of the trade or business in which the defendant was engaged and had undertaken to perform; (2) if the maintenance of the bell was part of the defendant's business, was the injury to plaintiff, who was directly employed by the Bell Telephone Company, compensable under section 44-503, G. S. 1935, the so-called subcontractor's section of the act?

Under the facts as alleged, it was clearly part of the defendant's business to have and to operate the various electrical equipment including this particular bell in connection with the operation of its extensive meat packing business. To hold otherwise would be to say that no employee working for the defendant could recover compensation under the act if he was injured while operating any part of the electrical equipment incident to the manufacture and processing of meat products. The only question is whether the *repairing* of this bell and *keeping it in working order* was a part of the work which the company had undertaken to do as a part of its trade or business.

We find nothing in the allegations to support appellee's argument that the repairing of the bell was a part of a public utility service. He says that "maintaining *telephone communications* was no part of the trade or business of packing and processing meat"; that the defendant "was merely *one of many customers of the Bell Telephone Company and it partook of a service amounting to a public utility* which the Bell Telephone Company furnished." However unintentional, this is an incorrect statement of the facts, as alleged. The bell was not a telephone bell. No fact is alleged from which it could even be inferred that it was a part of a telephone communication system. It was a signal bell attached to the wall of the large work room, and operated within the plant for the purposes hereto-

fore stated. No public utility feature is involved, under the allegations.

If one of the defendant's own employees had been injured while repairing the bell and in the manner in which appellee alleges he was injured, would anyone contend that the injury did not arise out of and in the course of the employment? We think not. And yet such a contention would be good if we were to say that it was no part of the business undertaken by the defendant to keep this electrical equipment in operating condition. If such maintenance was part of the work which the defendant had undertaken in the operation of its business, it could do it either by using its own workmen or by a continuing contract with someone else. The method used is not the determining factor. Nor does the fact that the contract was with a *telephone* company alter the issue. The question is precisely the same as if the maintenance contract had been with any other company or with some individual workman.

Having concluded that the maintenance of the various electrical equipment, including this call bell, was part of the business which the defendant had undertaken to perform, it follows that an injury suffered by an employee of an outside contractor, while engaged in repairing the bell under the contract, is compensable under the provisions of section 44-503, G. S. 1935, to the same extent as though he had been immediately employed by the defendant. The primary purpose of the compensation act is to provide protection to the workmen. Section 44-503 provides in substance that any employer who is under the act and who contracts with outsiders to have work done which is part of his trade or business is liable to pay compensation to injured workmen employed to perform under the contract to the same extent as though such workman had been directly employed by him. It is designed to give to employees of such contractor a remedy against the principal, and to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which is "part of the work undertaken by the principal." (*Bailey v. Mosby Hotel Co.*, supra, and cases cited on page 261.)

There is no need here for extensive review of our decisions dealing with section 44-503. Appellee relies principally upon *Lehman v. Grace Oil Co.*, 151 Kan. 145, 98 P. 2d 430, and *Bittle v. Shell Petroleum Corp.*, 147 Kan. 227, 75 P. 2d 829. In the Lehman case an oil company "engaged in the business of getting leases, drilling

wells, and producing oil" desired to have a house moved to one of its leases and made a contract with a man who was regularly engaged in the business of moving buildings, to move a house from a nearby town. While the contractor was moving the house and before the house had reached the lease, one of his employees was injured. The injured workman sought compensation from the oil company under section 44-503. The oil company had at no time been engaged in the business of moving houses and had no men in its employ skilled in that kind of work. It had occasionally moved small buildings located on its lease. It had not undertaken to provide houses upon its lease or to have houses moved to the lease either by its own workers or under a continuing contract with a house mover. It was held that the house mover was an independent contractor and that the oil company was not liable under the act. Many of our opinions were reviewed in the opinion in that case and distinctions that are evident in the case now before us were pointed out. Among the cases there distinguished was *Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219. In the Purkable case a workman was injured while helping to build a derrick on an oil company's lease. The workman was directly employed by the contractor who was erecting the derrick. In the light of all the facts disclosed it was held that the erection of a derrick was part of the company's business, incident to the drilling of the well. The company had made it a part of its regular business to erect oil derricks. The case is close to the one before us. Under the allegations the packing company maintained the electrical equipment not only as incident to, but as an integral part of its operations in the business of processing and packing meat.

In the Bittle case, a "Boiler and Welding Works" employed a workman, a welder by trade, to go to an oil lease to weld a boiler belonging to an oil company. While being accompanied by an employee of the oil company who had been detailed to show him how to reach the place where the work was to be done, the truck in which they were riding broke a gas pipe line laid across the roadway, gas was released with a resulting fire which severely burned the welder. The injured workman sought compensation under the act from the oil company. The case reached us on demurrer and it was held that under the facts admitted by the demurrer, the welding company was an independent contractor and the oil company was not liable under the act. The case is the strongest one cited by appellee in

support of his contention, but upon the divergent facts, as admitted by demurrer in both cases, we think the cases are readily distinguishable. In the case of the welder, the oil company had not undertaken to weld boilers, it had no employees and no continuing contract for that purpose. Under the facts as alleged an expert was called in—in an isolated instance—to do work which the company had not assumed as part of its business. Here, on the contrary, the work being done by the contractor's employee under the allegations, was an integral part of the work assumed and carried on by the packing company.

Other analogous Kansas cases in addition to those above cited, in which the work being done by the employee of the contractor was held to be a part of the principal's trade or business are *Williams v. Cities Service Gas Co.*, 139 Kan. 166, 30 P. 2d 97, in which a gas distributing company was held liable for injuries suffered by a workman while digging a ditch as an employee of a ditch-digging company which had contracted to do the work; *Jennings v. Kansas Power & Light Co.*, 152 Kan. 469, 105 P. 2d 882, which arose out of the same accident involved in the Bittle case, *supra,* and in which an injury to the employee of the oil company who was directing the welder to the place where he was to work was held compensable under the act.

In conclusion we take note of appellee's contention that this action was brought against the appellant as a negligent third person under the provisions of section 44-504, G. S. 1943 Supp. In the first place, section 44-504 is a part of the workmen's compensation act which the instant common-law action seeks to avoid, and nothing in the petition indicates that the action was brought under it. In the next place, section 44-504 deals with cases where in addition to the employer's liability under the act, third persons are also legally liable independent of the act. The section has no applicability to any issue presented by this appeal.

The judgment is reversed, with directions to overrule the motion to strike portions of the defendant's answer.