No. 48,410

Nancee K. Ellis, widow, Randal Scott Ellis, minor son, Jeffery Charles Ellis, minor son of Charles Lindell Ellis, deceased, *Appellants*, v. Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc. and Southeastern Aviation Underwriters, Inc. and Insurance Company of the State of Pennsylvania, and Mann-Kline, Inc., Division of Marsh & McLennan, and Corky Nason, agent for Mann-Kline, Inc., *Appellees.*

(562 P. 2d 75)

Opinion filed March 5, 1977.

George W. Earnshaw, of Ivan & Earnshaw, of Shawnee Mission, argued the cause, and Janine D. Hassler, of the same firm, and David T. Martindale, of Kansas City, Missouri, were with him on the brief for the appellants.

Richmond M. Enochs, of Wallace, Saunders, Austin, Brown and Enochs, of Overland Park, argued the cause, and Barry E. Warren, of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal wherein the surviving dependents of a deceased workman were awarded workmen's compensation benefits against Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., the workman's direct employer who had just two weeks prior to the fatal aircraft accident purchased a flight training school from Mid-Continent Aviation, Inc. Unable to collect the award from the deceased workman's direct employer, the surviving dependents brought an action against the insurance carrier, the insurance agent and the agency which had previously written workmen's compensation insurance on Mid-Continent Aviation, Inc., the entity from which Mr. Fairchild had purchased his business. (The action was also against the deceased workman's direct employer, but he was dismissed by the trial court without prejudice to the plaintiffs, and this appeal does not concern him.) The trial court found against the plaintiffs and refused to permit recovery against the insurance defendants.

On appeal the surviving dependents of the deceased workman seek to establish a relationship which will render the insurance defendants liable for the award against Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc. They contend there was either a lessor/lessee or a contractor/subcontractor relationship, as provided by K. S. A. 44-508 (h) or K. S. A. 44-503 (a), which makes the workmen's compensation insurance carrier of Mid-Continent Aviation, Inc., liable for the award.

Nancee K. Ellis, Randal Scott Ellis and Jeffery Charles Ellis (plaintiffs-appellants) are, respectively, the wife and minor children of Charles Lindell Ellis, a deceased employee of Kenneth Fairchild,

d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc. (Kenneth Fairchild repeatedly denied that he was incorporated. However, the trial court used "incorporated" in its journal entry.) Southeastern Aviation Underwriters, Inc., Insurance Company of the State of Pennsylvania, Mann-Kline, Inc., Division of Marsh & McLennan, and Corky Nason, agent for Mann-Kline, Inc., (defendants-appellees) are, respectively, the insurance carriers, insurance agency and insurance agent which procured, brokered, underwrote or issued a policy of workmen's compensation insurance covering Mid-Continent Aviation, Inc. By court order dated November 21, 1973, American Home Assurance Company, subsequent to the filing of the action, was added as a party defendant.

Mid-Continent Aviation, Inc., (hereafter also referred to as Mid-Continent) leased land at the Fairfax Airfield from the Board of Public Utilities of Kansas City, Kansas. Mid-Continent conducted two different aircraft schools, a "flight" school which trained pilots and a "ground" school which trained aviation mechanics.

Prior to October of 1968, Kenneth Fairchild and Charles Lindell Ellis worked as flight instructors for Mid-Continent's "flight" school.

On October 1, 1968, Kenneth Fairchild and his financial backer, Mr. Horridge, entered into a purchase agreement with Mid-Continent, to buy the "flight" school. Mid-Continent retained the "ground" school. Mr. Fairchild's name was used in the business name of the newly acquired "flight" school business, which was named Kenneth Fairchild Mid-Continent Aviation, Inc., because it was well-known in aviation circles.

Under the purchase agreement, Mid-Continent sold, transferred and assigned to Kenneth Fairchild:

"[T]he right to train the current active flight school students of Mid-Continent, seventy-five percent (75%) of the existing prepaid receipts of Mid-Continent for active flight school students . . ., the right to the telephone numbers FAirfax 1-3035, 3036, and 3037, and the right to use the name 'Mid-Continent Aviation Flight' in connection with the operation of a flight school."

*The above assets were the only assets included in the sale and transferred.* Mid-Continent continued to operate the "ground" school. Mr. Fairchild continued to use the same premises for the "flight" school as before, but he did not report or answer to anyone at Mid-Continent. Mr. Horridge had no connection with Mid-Continent.

Nothing in the purchase agreement mentioned workmen's compensation. Mr. Fairchild testified he thought he was covered by workmen's compensation insurance for his employees, and he had

never received any notice of cancellation by the insurance company. He testified Mr. Horridge took care of all the paper work.

Nothing in the purchase agreement mentioned renting facilities from the Board of Public Utilities. Although Mr. Fairchild was not clear about whether he leased facilities from the Board of Public Utilities or from Mid-Continent, cross-examination produced the following exchange:

"Q. Did you ever execute a lease with the City of Kansas City, Kansas or the Board of Public Utilities yourself with regard to the premises? Yes or no?

"A. I believe so, yes, sir."

Mr. Fairchild employed Charles Ellis as a pilot instructor for Kenneth Fairchild Mid-Continent Aviation, Inc. Mr. Fairchild testified he never told Mr. Ellis of the change in employer status. The last check Mr. Ellis received while living was signed by Mid-Continent.

On October 14, 1968, Charles Ellis died in an aircraft accident while working for Kenneth Fairchild Mid-Continent Aviation, Inc. On November 22, 1968, Kenneth Fairchild Mid-Continent Aviation, Inc., issued its first and last check to Mrs. Ellis to pay for Mr. Ellis' work. Mrs. Ellis testified this was the first time she became aware that Mr. Fairchild had become Kenneth Fairchild Mid-Continent Aviation, Inc.

Approximately a year later, Mrs. Ellis filed a workmen's compensation claim. On May 14, 1971, Duane E. West, examiner, made a workmen's compensation award in favor of the claimants in the sum of $17,250. From the record it appears that Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., was the only respondent in the workmen's compensation action. Apparently Kenneth Fairchild Mid-Continent Aviation, Inc., never acquired workmen's compensation insurance and claimed insolvency.

On October 18, 1972, the plaintiffs filed a direct action in the district court of Wyandotte County. The petition alleged the compensation award in favor of the plaintiffs, demand upon Kenneth Fairchild Mid-Continent Aviation, Inc., and Southeastern Aviation Underwriters, Inc., and their refusal to pay. It then alleged:

"That by reason of the refusal and failure of the defendants to pay the plaintiff in accordance with the award, the entire balance of the award in the amount of $17,250.00 together with interest has become due and payable."

On March 26, 1973, and December 7, 1973, the plaintiffs filed their first and second amended petitions respectively. The petition and the amended petitions alleged:

"That defendant Kenneth Fairchild d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., is the same corporation or a successor corporation or the alter ego of Mid-Continent Aviation, Inc. that was the employer of the above-named deceased."

The plaintiffs claimed the Board of Public Utilities of Kansas City, Kansas, was the principal within the meaning of K. S. A. 44-503 dealing with subcontracting, but no claim is made in the petition or amended petitions that the plaintiffs were attempting to hold Mid-Continent Aviation, Inc., on a similar theory. This claim was first asserted in the November 21, 1975, motion for a new trial. On December 1, 1975, the Board of Public Utilities was dismissed from the action without prejudice. No appeal has been taken from this order.

The defendants in their answers raised many defenses. Among other things they alleged no policy of insurance was ever written covering Kenneth Fairchild Mid-Continent Aviation, Inc., and the statute of limitations had run.

On November 13, 1975, the trial court ruled in favor of the defendants. The trial court found the defendants had only insured Mid-Continent Aviation, Inc., which was a different entity from Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc. The court also found:

". . . [T]hat none of these defendants either procured, brokered, underwrote, or issued any policies of insurance covering Kenneth Fairchild d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc.

". . . [T]hat none of the foregoing defendants, either issued, brokered, placed or had any insurance that would be applicable to the award of compensation which was introduced into evidence by plaintiff's counsel."

The trial court found the deceased workman, Charles Ellis, died during the time he was working for Kenneth Fairchild d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., and there was no liability on the part of the defendants. It also found Kenneth Fairchild and others entered into a purchase of a portion of the Mid-Continent business on October 1, 1968.

The trial court concluded that the plaintiffs failed to sustain their burden of proof in showing that there was any applicable insurance, either issued, placed, brokered, or underwritten on Kenneth Fairchild d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., which would be applicable to the award of compensation previously entered.

On November 21, 1975, the plaintiffs moved for a new trial contending, for the first time, the court erred in ruling that Kenneth

Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., and Mid-Continent Aviation, Inc., were not joint employers of the claimants' decedent under the Kansas Workmen's Compensation Act, pursuant to K. S. A. 44-508 (h), K. S. A. 44-503 (a) and K. S. A. 40-2212.

The motion for a new trial was denied, and after some dispute over settling the journal entry, appeal was duly perfected.

All points asserted by the appellants are founded upon the existence of a certain relationship between Kenneth Fairchild d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., and the entity referred to as Mid-Continent Aviation, Inc. The appellees contend the trial court's findings preclude all such arguments, and that its findings cannot be disturbed on appeal because there has been no showing of arbitrary or capricious disregard of undisputed evidence, or other extrinsic considerations such as bias, passion or prejudice on the part of the trial judge.

The appellees cite the numerous affirmative findings made by the trial court, heretofore quoted, and argue that these findings serve as a basis for a rejection of each and every point advanced by the appellants.

The appellants first contend the trial court erred in not finding from the evidence that there was a lessor/lessee relationship between Kenneth Fairchild Mid-Continent Aviation, Inc., and Mid-Continent Aviation, Inc., which made them joint employers under K. S. A. 44-508 (h) [Weeks] (L. 1968, ch. 102, § 2).

This section of the statute provided:

" 'Employer' includes any person or body of persons, corporate or unincorporate, and the legal representative of a deceased employer or the receiver or trustee of a person, corporation, association or partnership; and *when any* mine, quarry, factory, or *other place covered by the provisions of this act in which work is being or to be performed, is leased or let to any lessee or lessees under any form of contract or agreement other than on a royalty basis, then and in all such cases the lessee* or lessees *and the lessor* or lessors *shall be deemed to be operating said* mine, quarry, factory, or *other place described above as employers jointly."* (Emphasis added.)

This section of the statute pertaining to the definition of "employer" was amended by the Laws of 1974, ch. 203, § 7 and the lessor/lessee provisions deleted.

The record establishes that Mid-Continent Aviation, Inc. is a corporate entity which elected to come under the Workmen's Compensation Act.

On this point the appellants cite *Jennings v. Kansas Power &*

*Light Co.,* 152 Kan. 469, 105 P. 2d 882, where the court, applying the above section of the statute, said:

"The petition disclosed this situation. Appellee owned a leasehold. The contracts granted rights in the lease to the Shell Petroleum Corporation. As between the two corporations, the appellee was the lessor and the Shell Petroleum Corporation was the lessee. There was no allegation the agreement by which the Shell Petroleum Corporation operated was on a royalty basis. Lacking such an allegation, the statute applied, with the necessary conclusion that as to the appellant the two corporations were operating the lease *'as employers jointly.'*" (Emphasis added.) (p. 472.)

The appellants cite the record where Kenneth Fairchild testified that he did pay rent on a lease basis to Mid-Continent Aviation, Inc., for the premises used in conducting the flight school which he purchased. On this theory the appellants argue that lacking allegations the terms of the lease were on a royalty basis, the legislature's imperative use of language requires a conclusion, under the authority of *Jennings,* that Kenneth Fairchild Mid-Continent Aviation, Inc., was a lessee and thus a joint employer with Mid-Continent Aviation, Inc.

Initially, it must be recognized the record is not clear whether the lessor/lessee issue was fairly presented to the trial court. The record discloses the appellants first raised this issue in the trial court on their motion for new trial and in their supporting memorandum. Assuming the issue was properly presented to the trial court by the motion for a new trial (see, *Becker v. McFadden,* 221 Kan. 552, 561 P. 2d 416), the record does not conclusively establish that Kenneth Fairchild Mid-Continent Aviation, Inc., had a lease with Mid-Continent Aviation, Inc. The appellees argue, in substance, the affirmative findings made by the trial court are tantamount to a negative finding by the trial court, the effect of which was that the lessor/lessee relationship between Mid-Continent Aviation, Inc., and Kenneth Fairchild Mid-Continent Aviation, Inc., was not established. (See *Union National Bank & Trust Co. v. Aker,* 213 Kan. 491, 516 P. 2d 999; *Fox v. Wilson,* 211 Kan. 563, 507 P. 2d 252; and *Short v. Sunflower Plastic Pipe, Inc.,* 210 Kan. 68, 500 P. 2d 39.)

To resolve the question it may be assumed the lessor/lessee issue was presented to the trial court, and it may further be assumed that Kenneth Fairchild Mid-Continent Aviation, Inc., did have a lease for the continued use of the premises of Mid-Continent Aviation, Inc., to conduct the flight school business. At this point careful analysis of the decision in *Jennings v. Kansas Power & Light*

*Co.,* supra, is imperative. This is the only Kansas case applying the lessor/lessee provisions of 44-508 (*h*), *supra.* The legal proposition stated in Syllabus Para. 2 of *Jennings* has not been cited in any subsequent Kansas case. No earlier decisions deal with leases under 44-508 (*h*), *supra.* In *Jennings* the plaintiff, an employee of Shell Oil Company, was injured on an oil and gas tract leased by Kansas Power & Light to Shell. Kansas Power & Light, the lessor, operated the wells for gas on the lease and Shell, the lessee, operated the wells for oil production. Kansas Power & Light maintained the road on which the accident occurred for itself and Shell. The court concluded (without citation) 44-508 (*h*), *supra,* applied and the lessor was said to be liable under the Workmen's Compensation Act. Therefore, the common-law action brought by the plaintiff for negligence failed; his remedy for relief was said to be found under the Workmen's Compensation Act.

The court, however, was not content to base its decision solely upon the application of 44-508 (*h*), *supra.* In the opinion the court said:

"Even if the above statute [44-508 (*h*)] did not apply, it would not follow the appellant could maintain the action. It clearly appears from the petition that appellee [K. P. & L.], as lessee of an oil and gas lease, undertook by contract to have its wells drilled by another, and that after wells were produced, appellee operated them for gas and Shell Petroleum Corporation operated for oil, the two using the facilities of the lease jointly for those purposes. . . . *It does appear that appellee as principal had contracted with the appellant's employer to perform work which appellee had undertaken.* Under such circumstances, by reason of G. S. 1935, 44-503, appellee was liable to pay to the workman employed any compensation which it would have been liable to pay if the workman had been immediately employed by it. The allegations of the petition disclose a situation where appellant was under the workmen's compensation act insofar as Shell Petroleum Corporation was concerned, and *it follows by reason of the contract between that corporation and the appellee, he was under the same act insofar as appellee was concerned.* That being true, appellant could not maintain a common-law action for damages for negligence. He must find his relief under the workmen's compensation act." (Emphasis added.) (p. 473.)

Prior to 1927, when 44-508 (*h*), *supra,* was enacted, the supreme court had difficulty with leasing situations under the Workmen's Compensation Act. (See *Maughlelle v. Mining Co.,* 99 Kan. 412, 161 Pac. 907; and *Pottorff v. Mining Co.,* 86 Kan. 774, 122 Pac. 120.)

When in force and effect, 44-508 (*h*), *supra,* served as the definition for the term "employer" under the Kansas Workmen's Compensation Law. The definition represented the legislature's vehicle to enlarge the common-law definition of the term "employer" so as to

enable a wider application of the compensation principle to the employment relationship. The definition in force at the time of the accident herein included a reference to lessees under any form of contract or agreement, other than on a royalty basis.

In *Jennings* it was alleged the claimant was injured upon a road maintained by the lessor and that the claimant was on that road on the particular day in question as a result of the lessor's direction. Hence, contrary to the factual situation presented in the instant case, the elements of control were clearly in existence. For an earlier case in which the Kansas Supreme Court stressed the elements of control as the crucial test of liability in a similar lessor/lessee relationship arising out of a factual background dealing with an oil and gas lease see *Maughlelle v. Mining Co.,* supra.

The claimant in a workmen's compensation case must establish more than the mere existence of a lease between two parties prior to the imposition of liability on the ground that they are "employers jointly" under K. S. A. 44-508 (*h*). The mere leasing of property does not of itself make the lessor liable for injuries to the employees of the lessee, particularly where the employer-employee relationship does not exist between the lessor and the injured workman.

Colorado has a similar statute dealing with the lessor/lessee relation. Colorado Rev. Stat. Ann. [1975 Supp.] 8-48-101 provides:

"(1) Any person, company, or corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor, irrespective of the number of employees engaged in such work, shall be construed to be an employer . . . and shall be liable as provided in said articles to pay compensation for injury or death resulting therefrom to said lessees, sublessees, contractors, and subcontractors and their employees or employees' dependents. . . ."

The Colorado statute is designed to prevent evasion of their workmen's compensation insurance scheme. (*Industrial Com. v. Bracken,* 83 Colo. 72, 76, 262 Pac. 521 [1927]; and *Zimmerman v. Industrial Com.,* 109 Colo. 533, 540, 127 P. 2d 878 [1942].) However, the Colorado statute does not make every lessor automatically liable for compensation to the lessee's employees. To make the lessor liable there must be facts showing he was operating, engaged in or conducting his business by leasing; not merely that he was a lessor. (*Index M. Co. v. Industrial Com.,* 82 Colo. 272, 274, 259 Pac. 1036 [1927]; and *Continental Co. v. Sirhall,* 122 Colo. 332, 334, 222 P. 2d 612 [1950].) In *Industrial Com. v. Vancil,* 133 Colo. 238, 293 P. 2d 641 (1956), the Colorado Supreme Court held the lessor

who leased automotive and transportation equipment to another did not become the statutory employer of the lessee's employees. In the opinion the court said:

". . . Surely it cannot reasonably be contended that the owner of such equipment upon leasing or renting it to another becomes, by operation of law, the employer of the employees of the user of such machine. The statute involved is limited in application to that person, company, or corporation which conducts his or its *own* business by *leasing or contracting out* any part or all of his or its work. He who conducts his own business in such manner, by operation of law becomes the employer of those engaged in the conduct of that business; but one who leases equipment to another that it may be used only in that other business, in which the lessor has no interest, is not an employer under the statute. . . .

"Instances where liability has been imposed by operation of law under the statute arise only in those cases where it has been clearly shown the company or person charged has actually been conducting its own business through some system of leasing or contracting. Typical of such instances is *Continental Oil Co. v. Sirhall*, 122 Colo. 332, 222 P. 2d 612." (p. 242.)

Similarly, K. S. A. 44-508 (*h*) cannot be applied to all lessor/lessee situations.

*Jennings* must be distinguished from the present case. The claimants have the burden of proving the conditions upon which recovery depends. (*Riedel v. Gage Plumbing & Heating Co.*, 202 Kan. 538, 449 P. 2d 521.) Here the claimants did not prove Mid-Continent Aviation, Inc., maintained or supported the "flight" facilities in question. The claimants in no way show any attempt by Mid-Continent Aviation, Inc., to evade the Workmen's Compensation Act. A lessor who merely leases a building or facilities for the lessee's business should not be liable under 44-508 (*h*), *supra*, of the Kansas Workmen's Compensation Act.

Accordingly, the trial court's refusal, on the record here presented, to recognize the lessor/lessee relationship as a vehicle to impose liability pursuant to 44-508 (*h*), *supra*, was proper.

Next the appellants contend the trial court erred in not finding from the evidence a contractor/subcontractor relationship which imposes liability on Mid-Continent Aviation, Inc., as the contractor under K. S. A. 44-503 (*a*). (Now K. S. A. 1976 Supp. 44-503 [*a*].)

This section is designed to prevent employers from evading liability under the Workmen's Compensation Act by the device of contracting with outsiders to do work which they would have undertaken to do as a part of their trade or business. (*Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, 167 P. 2d 613; and *Durnil v. Grant*, 187 Kan. 327, 333, 356 P. 2d 872.)

The appellant contends Mid-Continent Aviation, Inc., contracted with students to perform work, and subcontracted that work to Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc. For this proposition they rely on the Assets Purchase Agreement and Bill of Sale in the record.

The test to be applied in resolving cases of this nature was recently restated in *Woods v. Cessna Aircraft Co.*, 220 Kan. 479, 553 P. 2d 900, where the court stated:

"In connection with K. S. A. 44-503 (*a*) under the Workmen's Compensation Act, this court has laid down two rather definite tests by which to determine whether the work covered by a contract is part of the principal's trade or business, *i. e:* (1) Is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) Is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal? If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's 'trade or business,' and the injured employee's sole remedy against the principal is under the Workmen's Compensation Act." (Syl. 2.)

(See also *Hanna v. CRA, Inc.*, 196 Kan. 156, 409 P. 2d 786; and *Watson v. Dickey Clay Mfg. Co.*, 202 Kan. 366, 450 P. 2d 10.)

The fundamental premise upon which liability is predicated in the Workmen's Compensation Act under 44-503 (*a*), *supra*, is the existence of a contract between the two employers. (*Schafer v. Kansas Soya Products Co.*, 187 Kan. 590, 597, 358 P. 2d 737.)

Here there is no contract covering any employment aspects between Kenneth Fairchild Mid-Continent Aviation, Inc., and the separate entity of Mid-Continent Aviation, Inc., which would support a contractor/subcontractor relationship under 44-503 (*a*), *supra*. To the contrary, the findings of the trial court, which are supported by the evidence, establish that the business of the flight school was purchased by Kenneth Fairchild from Mid-Continent Aviation, Inc. After the sale Mid-Continent Aviation, Inc., continued to run the ground school while Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., ran the flight school. Mid-Continent Aviation, Inc., did not retain or exercise any control over the flight school which it sold to Kenneth Fairchild.

The work of the deceased, a flight instructor, was not a necessary or integral part of Mid-Continent Aviation, Inc.'s training of aviation mechanics at the "ground" school, which was its business after the sale was made to Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc.

After the sale the flight instruction work performed by the deceased would not ordinarily have been done by any employee of Mid-Continent Aviation, Inc., as part of their training of aviation mechanics at their "ground" school.

If workmen's compensation liability is imposed in accordance with the desires of the appellants on the record here presented, our decision would foreclose the legitimate sale of a business. In other words, a contract for the sale of a business is not the kind of contract contemplated by 44-503 (*a*), *supra*.

The last point asserted by the appellants is that notice, service and judgment against Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., the employer, is notice, service and judgment against the insurers named in this suit, pursuant to K. S. A. 40-2212.

This point is immaterial in view of our conclusion that Mid-Continent Aviation, Inc., and Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., have not been established to be joint employers. In this situation the workmen's compensation insurance carrier of Mid-Continent Aviation, Inc., is not rendered liable for the workmen's compensation award against Kenneth Fairchild, d/b/a Kenneth Fairchild Mid-Continent Aviation, Inc., by the provision of K. S. A. 40-2212.

Six years after the accident the legislature enacted K. S. A. 1976 Supp. 44-532a (L. 1974, ch. 203, § 32). This section of the Workmen's Compensation Act indicates where an employer fails to provide workmen's compensation insurance as required by law, the Workmen's Compensation Fund *may* pay an award or part of the award. This section may provide relief in similar situations in the future. The statute of limitations and other considerations may bar relief to the claimants here. It is a question we leave open because insufficient information in the record precludes its pursuit. The appellees raised the statute of limitations defense in the trial court, but the basis for it is not disclosed. The trial court did not decide the issue, and there is nothing in the briefs filed on appeal.

The judgment of the lower court is affirmed.