(633 P.2d 1166)
No. 52,538

WILLIE MAE ROBINSON, Mother of Howard L. Robinson, Deceased, *Appellant,* v. FLYNN'S FERRY SERVICE, INC., *Appellee.*
Petition for review denied December 9, 1981.

Opinion filed August 28, 1981.

*Randy S. Stalcup,* of Kidwell & Williamson, Chartered, of Wichita, for the appellant.

*Harry L. Eddy,* of Wichita, for the appellee.

Before SPENCER, P.J., SWINEHART and MEYER, JJ.

SPENCER, J.: This is an appeal from judgment of the trial court which sustained the findings of the examiner and the workmen's compensation director in denying coverage under the Workmen's Compensation Act.

Claimant's brief contains six issues, only one of which was considered by the examiner, director and district court. That issue is whether decedent was an independent contractor, and thus not

covered by the act, or a "statutory employee" pursuant to K.S.A. 1980 Supp. 44-503. Accordingly, only this issue will be considered on appeal.

Howard L. Robinson was the president as well as owner-operator of Maize Flying Service, Inc. Maize was a small operation, and Mr. Robinson from time to time contracted with other companies to ferry planes. When he did so, any money received went to Maize.

In February, 1978, Mr. Robinson contracted with Flynn's Ferry Service, Inc., to deliver a Cessna 185 from Wichita to Vancouver, British Columbia, Canada. On the morning of February 23, 1978, he left Wichita and flew to Hays where he picked up his mother (the claimant herein). The two then flew to Hygiene, Colorado, where Mrs. Robinson was to visit a daughter who lived there. The carrying of passengers violated the manifest for this trip. Mr. Robinson then continued on toward Vancouver. Near Yakima, Washington, he encountered bad weather and the plane crashed. Mr. Robinson was killed.

Thomas Flynn, owner-operator of Flynn's Ferry Service, Inc., with whom Mr. Robinson had contracted, stated that the plane was to be delivered to West Coast Air Services, a Cessna distributor, in Vancouver. He had received a telex from Cessna headquarters in Winnipeg requesting a bid to ferry the plane. He made a bid and got the job. Since all of his pilots were busy and Robinson had been asking him for work, he orally contracted with Robinson to ferry the plane. In doing so, it was his understanding that he was contracting with Maize Flying Service, Inc. (As such, Mr. Robinson did not have to make the flight personally. Mr. Flynn thought that Robinson was the only pilot Maize had who was qualified, although there might have been another.)

Mr. Flynn stated that 40 to 50% of his business was the ferrying of planes. 96% of this was done by pilots he employed. Bids to his customers were based on a per mile rate, cost of return fare, fuel, and insurance if desired. Payment to his own pilots was based on 6¢ per mile, a per diem (usually $30), cost of fuel, and return fare. Contract pilots, such as Mr. Robinson, took the job for the total bid less 10% which Flynn took off the top. At the time of this accident, Flynn had no workmen's compensation coverage.

Karen Sissom, Mr. Robinson's fiance and bookkeeper for Maize, was also a pilot and had flown some contract jobs. She

stated that a contract pilot "would get the packet and the keys and then it was up to him when he departed and what route he flew and he was truly pilot in command. There was no control."

Mr. Robinson's mother filed a claim for workmen's compensation benefits against Flynn's Ferry Service, Inc. Based on the evidence set forth, the examiner denied the claim, finding that Mr. Robinson was an independent contractor rather than an employee or statutory employee. The director affirmed, as did the trial court.

The trial court stated, as its combined findings of fact and conclusions of law:

"1. That the issue to be decided is whether or not the decedent, Howard L. Robinson, was a statutory employee pursuant to K.S.A. (1980 Supp.) 44-503.

"2. That there is no dispute as to the facts in regard to this case and the court specifically finds that Maize Flying Service, Inc. contracted with Flynn's Ferry Service, Inc. relative to the flight in question and Howard L. Robinson was an employee of Maize Flying Service, Inc. and the only issue presented to this court is the application of the law to the facts and the court concludes that Howard L. Robinson was an independent contractor and not a statutory employee of the respondent as set forth in K.S.A. (1980 Supp.) 44-503."

Our scope of review is limited to questions of law. The question of whether a district court's judgment is supported by substantial evidence is one of law, and if, when viewed in the light most favorable to the party prevailing below, there is substantial evidence to support the factual findings of the district court, this court is bound by those findings and has no power to weigh the evidence or to reverse the final order of that court. *Crabtree v. Beech Aircraft Corp.,* 229 Kan. 440, 442, 625 P.2d 453 (1981).

It is important to put the legal arguments into context. It is basic that to be entitled to compensation under the Workmen's Compensation Act, the claimant, or the person through whom the claim is made, must be an "employee" of an "employer." K.S.A. 1980 Supp. 44-501; K.S.A. 1980 Supp. 44-508(*b*). Thus, the question has often arisen whether the claimant is an independent contractor rather than an employee. If so, the act does not apply. See, *e.g., Scammahorn v. Gibraltar Savings & Loan Assn.,* 197 Kan. 410, 416 P.2d 771 (1966).

Claimant does not here contend that Mr. Robinson was an employee under the tests traditionally applied to determine that issue. Instead, she contends he was an employee by operation of K.S.A. 1980 Supp. 44-503(*a*), which provides in part:

"(*a*) *Where any person* (in this section referred to as principal) *undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person* (in this section referred to as the contractor) *for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under the workmen's compensation act which he would have been liable to pay if that workman had been immediately employed by him;* and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workmen's compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed." (Emphasis supplied.)

Under this section coverage is extended to employees who would not ordinarily be considered within the common law definition of an employee. It is therefore often referred to as creating "statutory employees." *Durnil v. Grant,* 187 Kan. 327, 356 P.2d 872 (1960).

Despite the fact the record demonstrates the applicability of K.S.A. 1980 Supp. 44-503 was presented to the examiner, director and district court, respondent does not address that issue. Instead, it states:

"The claimant urges the Court to apply the Loaned Servant Rule to find that the pilot was in the position of an employee of Flynn's Ferry Service. The test of servitude must be met before the deceased can be transferred from the category of an independent contractor, to that of an employee."

Contrary to respondent's statement, there is no issue here of the loaned servant doctrine. It has been recognized there is a distinction between statutory employees and special (or loaned) employees. A statutory employee is such by statute and in derogation of common law. A special or loaned employee is a creature of the common law and becomes a regular employee under the Workmen's Compensation Act without the need of a statutory provision. *Bendure v. Great Lakes Pipe Line Co.,* 199 Kan. 696, 701, 433 P.2d 558 (1967). Thus, where the question is whether the claimant is a statutory employee "the test of servitude" applied under the common law becomes irrelevant. The matter is governed by the terms of the statute. The bulk of respondent's brief is therefore immaterial to the issue of this case.

It has been stated that the principal purpose of K.S.A. 1980 Supp. 44-503(*a*) is:

" '[T]o give to employees of a contractor who has undertaken to do work which is a part of the trade or business of the principal, such remedy against the principal

as would have been available if they had been employed directly by the principal, and to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business.' " *Fugit, Administratrix v. United Beechcraft, Inc.,* 222 Kan. 312, 315, 564 P.2d 521 (1977), citing *Hoffman v. Cudahy Packing Co.,* 161 Kan. 345, Syl. ¶ 4; 167 P.2d 613 (1946).

The fundamental premise upon which liability is predicated under 44-503(*a*) is the existence of a contract between two employers. *Ellis v. Fairchild,* 221 Kan. 702, Syl. ¶ 3, 562 P.2d 75 (1977). Two tests are applied to determine whether work covered by a subcontract is a part of the principal contractor's trade or business. They are:

"(1) Is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) Is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal? If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's 'trade or business,' and the injured employee's sole remedy against the principal is under the Workmen's Compensation Act." *Ellis v. Fairchild,* 221 Kan. 702, Syl. ¶ 2.

It is not required that the work being performed by the injured workman be the primary business of the general contractor. It is sufficient if the work being performed is some integral part of the general contractor's trade or business or is work which the general contractor has contracted to perform for another. *Fugit, Administratrix v. United Beechcraft, Inc.,* 222 Kan. 312, Syl. ¶ 2.

Applying the statute and these tests to this case, we find: First, the principal contractor (Flynn's Ferry Service, Inc.), contracted to deliver a Cessna 185 to Vancouver, British Columbia. Mr. Flynn testified that 40 to 50% of his business was the ferrying of airplanes and that 96% of this was done by his own employees. Thus, both of the tests for determining whether the work was a part of Flynn's "trade or business" have been met. Either would have been sufficient. Second, Flynn's contracted with Maize Flying Service, Inc. (the contractor), for execution "of the work undertaken by the principal." Again, Mr. Flynn testified that he contracted with Maize, not Mr. Robinson as an individual. Third, Robinson was a "workman employed in the execution of the work." It is of note that the trial court specifically found Robinson was an employee of Maize Flying Service, Inc. The terms of K.S.A. 1980 Supp. 44-503(*a*) clearly apply and Robinson should have been found a statutory employee of Flynn's.

The examiner, director and trial court did not address the question of whether 44-503(*a*) applied. This was apparently because they considered the conclusion that Robinson was ｊan independent contractor determinative. Such would be the case if the evidence established that Robinson *as an individual* had contracted with Flynn's and the question was his employment status in relation to Flynn's. Under such circumstances, a finding that Robinson was an independent contractor could readily be affirmed. However, the undisputed testimony, including that of Mr. Flynn, and the trial court's own findings of fact establish that Flynn's contracted with Maize Flying Service, Inc., and that Robinson was an employee of Maize. It may be conceded that Maize was an independent contractor in relation to Flynn's, with Flynn's having no right of control over the details of ferrying the plane to Vancouver. This does not, however, preclude Robinson from being a "statutory employee" of Flynn's. Our Supreme Court has consistently held that employees of independent contractors performing work which is part of the principal's "trade or business" are statutory employees of the principal. See, *e.g., Woods v. Cessna Aircraft Co.,* 220 Kan. 479, 553 P.2d 900 (1976); *Anderson v. Beardmore,* 210 Kan. 343, 502 P.2d 799 (1972); *Durnil v. Grant,* 187 Kan. 327; *Lessley v. Kansas Power & Light Co.,* 171 Kan. 197, 231 P.2d 239 (1951); *Swift v. Kelso Feed Co.,* 161 Kan. 383, 168 P.2d 512 (1946); *Bailey v. Mosby Hotel Co.,* 160 Kan. 258, 160 P.2d 701 (1945); *Lehman v. Grace Oil Co.,* 151 Kan. 145, 98 P.2d 430 (1940); *Purkable v. Greenland Oil Co.,* 122 Kan. 720, 253 Pac. 219 (1927).

In *Durnil v. Grant,* 187 Kan. 327, for example, an employee of an independent contractor hired by a wholesale fruit and vegetable distributor to deliver its product was found to be a statutory employee of the wholesaler. The court stated that the fact the wholesaler had "no particular control over the manner of operating the route itself is immaterial, since the function of a contractor is to perform work according to his own methods." 187 Kan. at 336. Thus, respondent's arguments and analysis of whether Robinson was an independent contractor in relation to Flynn's is immaterial to this case.

Finally, respondent makes much of the fact that Robinson was in violation of his flight manifest by taking a passenger for a

portion of the trip and that the "deviation" in doing so was a fatal mistake in this case. "Deviation" is completely immaterial to the issue on appeal and the issue decided below. By holding that Robinson was a "statutory employee" all that is done at this stage is to establish the employment relation for workmen's compensation purposes between Robinson and Flynn's. All other matters relating to whether compensation should be awarded and in what amount must be determined on remand. Among those matters is whether the "deviation" in this case was such as to work a deprivation of compensation otherwise available. See 99 C.J.S., Workmen's Compensation § 222, p. 745, for the general rule that an injury sustained by an employee during a temporary deviation or departure from his employer's business is not compensable. Of course, here it would appear that even if there was a deviation, there had been a return to the employer's business at the time of the accident. See 99 C.J.S., Workmen's Compensation § 222, p. 748. In any event, such matters are not material to the question presented.

We conclude that Howard L. Robinson was a statutory employee of respondent under the provisions of K.S.A. 1980 Supp. 44-503($a$). Accordingly, the judgment of the trial court is reversed and this cause is remanded for further proceedings.