(826 P.2d 515)
No. 66,019

DANIEL RODRIQUEZ, *Appellant*, v. JOHN RUSSELL CONSTRUCTION; CITY OF GARDEN CITY; USF&G, Insurance Carrier; and KANSAS WORKERS COMPENSATION FUND, *Appellees*.

Opinion filed September 13, 1991.

*Robert A. Levy*, of Garden City, for appellant.

*Christopher D. Sanders* and *R.H. Calihan, Jr.*, of Calihan, Brown, Burgardt & Wurst, for appellee City of Garden City.

Before LARSON, P.J., PIERRON, J., and STEVEN P. FLOOD, District Judge, assigned.

LARSON, J.: Daniel Rodriquez appeals from the denial of his workers compensation claim against the City of Garden City.

Rodriquez suffered a compression fracture to his back as the result of a fall that occurred while he was pulling an air compressor up a ladder during the repair of the Pershing Manor low income housing facility roof in Garden City, Kansas.

Pershing Manor is a Housing and Urban Development (HUD) subsidized project, which is operated by the Garden City Housing Authority pursuant to HUD guidelines.

The Garden City Housing Authority oversees the operation through a Board of Directors that employs a manager, Tresa Smith, a maintenance man, and a receptionist.

Due to a hailstorm, the roof of Pershing Manor required repairs. Insurance coverage existed. A check for $7,796.60 payable to the Housing Authority of Garden City and HUD was received, endorsed by HUD, then forwarded to the Garden City Housing Authority for use.

Bids were taken by the Garden City Housing Authority which culminated in a contract with John Russell Construction to make the necessary repairs to the roof. Russell employed Rodriquez, who was injured as previously described.

Russell did not maintain a gross annual payroll of $10,000 and appears not to be covered by the Workers Compensation Act. Rodriquez seeks compensation as a statutory employee of Garden City under the provisions of K.S.A. 44-503(a).

The administrative law judge (ALJ) denied coverage, concluding Rodriquez failed to prove that the work undertaken was part of the City's trade or business, or was work the City had contracted to do for a third party. The trial court agreed with the ALJ. Rodriquez appeals.

The scope of our review is established by the Act for Judicial Review and Civil Enforcement of Agency Actions (K.S.A. 77-601 *et seq.*) and K.S.A. 44-556. Our review on questions of law is unlimited, but on questions of fact we are limited to determining if there is substantial competent evidence to support the findings of the trial court. *Reeves v. Equipment Service Industries, Inc.*, 245 Kan. 165, 173, 777 P.2d 765 (1989) (citing *Williams v. Excel Corp.*, 12 Kan. App. 2d 662, 664, 756 P.2d 1104 [1988], and *Baxter v. L.T. Walls Constr. Co.*, 241 Kan. 588, 591, 738 P.2d 445 [1987]).

Because the primary issue herein is whether Rodriquez is covered by the Workers Compensation Act, the legislative intent of that Act as adopted by the 1987 Kansas Legislature is of prime importance.

"It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the workers compensation act to both. The provisions of the workers compensation act shall be applied impartially to both employers and employees in cases arising thereunder." K.S.A. 1990 Supp. 44-501(g); L. 1987, ch. 187, § 1.

Representative Donna L. Whiteman, in writing the 1987 Legislative Summary for the Kansas Bar Journal, described our obligation under this provision in the following manner:

"The liberal construction provisions of the Workers' Compensation Act are for the purpose of bringing employees and employers under the Act and once within the provisions of the Act, the Act shall be applied impartially to both the employer and the employee." Whiteman, *1987 Legislative Summary Part II*, 56 J.K.B.A. 24 (Sept./Oct. 1987).

Although this statement of legislative intent has yet to receive application by our appellate courts, the rule has long been stated in our reported cases that the Workers Compensation Act is to be liberally construed to allow coverage whether invoked by the worker or statutory employer. *Baird v. Phillips Petroleum Co.*, 535 F. Supp. 1371 (D. Kan. 1982); *Schafer v. Kansas Soya Prod-*

ucts Co., 187 Kan. 590, 358 P.2d 737 (1961); *Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 208, 231 P.2d 239 (1951).

The legal issue we must decide is whether Rodriquez became the "statutory employee" of Garden City. The applicable statute reads in pertinent part:

"**Subcontracting.** (a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under the workmen's compensation act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workmen's compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed." K.S.A. 44-503(a).

The purpose of this statute is to prevent evasion of compensation coverage by subcontracting the employer's normal work. 1 Larson, Workmen's Compensation § 49.00 (1991). It has become common to speak of the relationship as one of a "statutory employer" to a "statutory employee." This description arose because the legislature by statute desired to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has the ability to ensure appropriate compensation for its workers. Larson, § 49.11.

Because the Workers Compensation Act is the exclusive remedy of an injured worker, this test is usually invoked for the benefit of an employer in defending a civil action for damages. See *Woods v. Cessna Aircraft Co.*, 220 Kan. 479, 481, 553 P.2d 900 (1976), and *Shuck v Hendershot*, 185 Kan. 673, 347 P.2d 362 (1959). In *Woods*, the well-settled rule was restated: If a worker can recover workers compensation under the act, that remedy is exclusive and he cannot maintain a common-law action for damages against a party from whom he could have recovered workers compensation. 220 Kan. at 482.

The purpose of K.S.A. 44-503(a) is set forth in *Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, 167 P.2d 613 (1946):

"A prime purpose of section 44-503 of the workmen's compensation act is to give to employees of a contractor who has undertaken to do work which is a part of the trade or business of the principal, such remedy against the principal as would have been available if they had been employed directly by the principal, and to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business." 161 Kan. 345, Syl. ¶ 4.

The tests that must be applied to determine whether a task being performed by an employee is part of the principal's trade or business were set forth in *Hanna v. CRA, Inc.*, 196 Kan. 156, 159-60, 409 P.2d 786 (1966):

"(1) [I]s the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?

"If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's 'trade or business,' and the injured employee's sole remedy against the principal is under the Workmen's Compensation Act."

Most of the cases that discuss the "part of his trade or business" language apply the first test, but it is clear the second test also was intended to apply and an affirmative answer to either renders the Workers Compensation Act applicable. *Woods*, 220 Kan. at 484.

The cases contain no formula or list of factors deemed controlling. In *Fugit, Administratrix v. United Beechcraft, Inc.*, 222 Kan. 312, 315, 564 P.2d 521 (1977), the Kansas Supreme Court, in finding that modification work contracted to be performed for Beech Aircraft by United Aircraft was an integral part of the latter's trade or business, stated:

"K.S.A. 44-503(*a*) does not require the work undertaken to be the primary work of the principal contractor. It is sufficient if such work is a *part of the overall operations* of the principal contractor. A principal contractor may engage in several types of business activity, any one of which may constitute an integral part of its trade or business." (Emphasis added.)

In *Robinson v. Flynn's Ferry Service, Inc.*, 6 Kan. App. 2d 709, 633 P.2d 1166, *rev. denied* 230 Kan. 819 (1981), our court held that when one flying service contracted with another to ferry an aircraft, the pilot employee of the latter became the statutory employee of the former under 44-503(a). Judge Spencer opined that the fundamental premises upon which liability is predicated under 44-503(a) is the existence of a contract between the two employers, citing *Ellis v. Fairchild*, 221 Kan. 702, Syl. ¶ 3, 562 P.2d 75 (1977).

K.S.A. 44-503(a) has been applied to cases in which the work undertaken is not the primary work of the principal. In *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 661 P.2d 348 (1983), an employee of a roustabout service who was trenching ditches and installing a pipeline between a new well and a separator was deemed to be the statutory employee of the owner/producer of the oil and gas lease. Justice McFarland set forth the tests we have previously enumerated herein and opined:

"The provisions of the Workmen's Compensation Act are to be liberally construed to bring workers under the act whether or not it is desirable for the specific individual's circumstances. *Orr v. Holiday Inns, Inc.*, 230 Kan. 271, 634 P.2d 1067, *adopting* 6 Kan. App. 2d 335, 627 P.2d 1193 (1981)." 233 Kan. at 65.

She went on to state:

"The business of Graves is leasing, developing, operating and producing oil and gas properties. The undisputed facts show the drilling of wells, their completion, and their hookup to tank batteries were integral parts of such business. Further, Graves, as producer/operator of the lease, had the responsibility of bringing the new well into production—either by performing the necessary work itself or hiring it done by outsiders." 233 Kan. at 65.

We will not attempt to cite every Kansas case involving this issue. Many are collected in the Kansas Workers Compensation Handbook § 4.05 (1990) and several are cited at 6 Kan. App. 2d at 714. These cases consistently hold that employees of independent contractors performing work which is a part of the principal's "trade or business" are statutory employees of the principal.

Garden City may be a municipal corporation but, when it becomes involved as a local housing authority, its trade or business becomes everything inherent to the ownership and operation

of an apartment complex with a large number of tenants. It is clear that the repair, maintenance, and operation of the Pershing Manor apartment is a part of the primary trade or business of the Garden City Housing Authority. Roof repair was essential to protect the building and ensure that it remained habitable.

The construction placed on the statute by the trial court is too narrow and too restrictive. K.S.A. 1990 Supp. 44-501(g) and prior decisions direct us toward a liberal construction of the law when coverage is an issue.

Smith testified that in order to follow HUD guidelines, the Garden City Housing Authority was obligated to provide safe, decent, and sanitary living conditions for low income families. Smith said it is her responsibility "to see that the building is taken care of." The repair of the roof damaged by a western Kansas storm was an integral part of the Garden City Housing Authority's trade or business. Rodriquez is the statutory employee of the City of Garden City pursuant to K.S.A. 44-503(a) and is covered by the Workers Compensation Act.

Although we hold that maintenance and repair of the roof was within the trade or business of the Garden City Housing Authority in its capacity as the owner/operator of rental property we do not find, as Rodriquez argues, that the decision of *Harper v. Broadway Mortuary*, 6 Kan. App. 2d 763, Syl. ¶ 2, 634 P.2d 1146 (1981), construing the statutory wording relating to the contracting out to a third party of a contracted-for service, requires our finding that he was a statutory employee.

The relationship between HUD and the Garden City Housing Authority may be contractual, but there was no specific evidence that HUD contracted with Garden City, which in turn contracted with Russell Construction for the repair of the roof. Such would have to be the factual situation for *Harper* to apply. In *Harper*, a mortuary contracted with one of its customers for a funeral. The mortuary then contracted with Air Capitol Escort Service to provide an escort for the funeral procession. One of Air Capitol's employees, who fell and was killed while providing this service, was held to be the statutory employee of the mortuary. This holding was proper because the specific wording of K.S.A. 44-503(a) provides that a principal shall be liable to any workman performing work "*which he* [the principal] *has contracted to per-*

*form.*" (Emphasis added.) The Garden City Housing Authority has agreed to follow HUD guidelines in the operation of the Pershing Manor low income housing project, but we find no evidence of HUD having the repair and maintenance obligation, which it in turn contracted to the Garden City Housing Authority.

Reversed and remanded with instructions to enter judgment that Rodriquez is the statutory employee of Garden City and covered by the Workers Compensation Act. The trial court is directed to determine the nature and extent of Rodriquez's disability and the compensation to be awarded.