No. 46,545

Mrs. Winifred Anderson and James D. Voth and Eileen Voth, Parents of James M. Voth, Deceased, *Appellants*, v. H. K. Beardmore, Heber Beardmore, Jr. and Edna Beardmore d/b/a Beardmore Drilling Company; and E. L. Birmingham, Jr., W. N. Bartlett and Richard Hindery, d/b/a Birmingham-Bartlett Drilling Company, *Appellees*.

(502 P. 2d 799)

Opinion filed November 4, 1972.

*Dan Turner,* of Turner and Balloun, Chartered of Great Bend, argued the cause, and *Lee Turner* and *Thomas C. Kelley,* of the same firm, were with him on the brief for the appellants.

*Richard C. Hite,* of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, argued the cause, and *Larry A. Withers,* of the same firm, was with him on the brief for the appellees.

*Per Curiam:* This is an appeal from the summary judgment denying the heirs of a deceased employee of an independent contractor the right to maintain an action against the defendant owners and operators of an oil and gas lease for negligent injuries resulting in the death of two employees on the basis that the exclusive remedy of the heirs of the deceased employees was under the Workmen's Compensation Act.

The facts before us appear in the form of pleadings, stipulations and depositions. Plaintiffs-appellants are heirs of Robert Anderson and James Voth, employees of Acid Engineers, Inc. Defendants-appellees are H. K. Beardmore, Heber Beardmore, Jr. and Edna Beardmore doing business as Beardmore Drilling Company, and E. L. Birmingham, Jr., W. N. Bartlett and Richard Hindery doing business as Birmingham-Bartlett Drilling Company. Pertinent facts follow.

Both Beardmore Drilling Company and Birmingham-Bartlett Drilling Company own and operate producing oil and gas leases in Hodgeman County, Kansas, near Hanston. In conjunction with their oil production in Hodgeman County, Beardmore and Birmingham-Bartlett, as joint venturers, owned and operated a salt water

disposal well for purposes of disposing of salt water from the oil in the producing wells. The disposal well was located so that salt water produced by Beardmore and Birmingham-Barltett on adjacent leases could be drained to it by gravity flow. Under the arrangement between the defendants, Beardmore Drilling Company was responsible for operation of the salt water disposal well.

Beardmore Drilling Company had noticed a pressure build-up in the disposal well. A decision was made to acidize the well. Acidization is normally undertaken when the formation into which the salt water is being injected becomes clogged up. The acidization opens up the formation and facilitates the disposal of the salt water. Beardmore's employees on occasion would acidize the wells when the use of a pressure pump was not necessary. However, when it was necessary to use a pressure pump in the acidization process, Acid Engineers, Inc., would be called to do the work.

On the day before the accident, Mr. Hazlip, Beardmore's production superintendent, made arrangements with Bob Anderson, sales engineer for Acid Engineers, Inc., to bring 500 gallons of acid to the salt water disposal well, acidize the well, and then proceed to an oil well and do a "sand fracture". Anderson was in charge of the Acid Engineers, Inc., crew that acidized the well. Jim Voth and Gary Grey were the other members of the crew. When the acidization crew arrived at the disposal well, Mr. Hazlip, Beardmore's superintendent, told Anderson he wanted 500 gallons of acid pumped into the well and then displaced with salt water by the Beardmore salt water pump. Anderson agreed to the plan. The pump used to inject the salt water into the underground formation was located in the cellar approximately six or seven feet deep. Generally, the first step in the acidization procedure is to shut down that pump. Then a valve on the salt water line is closed and a union opened on the salt water line between the pump and the well. A hose from the Acid Engineers' truck is connected to the salt water line. After the valve is opened, the acid is pumped into the salt water line and to the well. Afterwards, salt water is pumped to displace the acid from the salt water lines and force it into the underground formation.

Anderson and Voth died as a result of inhalation of gas fumes while in the process of acidization of defendants' salt water disposal wells. Their heirs brought these actions against Beardmore Drilling Company and Birmingham-Bartlett alleging that their negligence caused the death of Anderson and Voth.

After numerous depositions were taken and stipulations of fact entered into, defendants filed a motion for summary judgment contending that Robert Anderson and Jim Voth, employees of Acid Engineers, Inc., were "statutory employees" and by reason thereof, their remedy, or that of anyone claiming by, through or under them, was exclusively under the Workmen's Compensation Act. After oral arguments and the filing of memorandum briefs, the trial court sustained defendants' motion for summary judgment, and concluded that the deceased employees fell within the purview of K. S. A. 44-503 (*a*), that they were "statutory employees" and that the remedy under the statute was exclusive and that no one who claims by, through or under them has any common law action in negligence against the principal.

Subsequently, a summary judgment was entered for the defendants and plaintiffs perfected the instant appeal. The appellants contend that the deceased, Anderson and Voth, were employees of an independent contractor and the plaintiffs had the right to bring the action under the provisions of K. S. A. 44-504 as the injuries were caused by someone other than the employer. Appellees contend that Anderson and Voth were statutory employees of the defendants under the provisions of K. S. A. 44-503 in that the work being performed by the deceased was a part of the appellees' trade or business necessarily inherent in and an integral part of defendants' oil producing business.

It is well established in this state that if a workman can recover benefits from an employer under the Workmen's Compensation Act for an injury, he cannot maintain a common law action against his employer for damages based on negligence. *Watson v. Dickey Clay Mfg. Co.*, 202 Kan. 366, 374, 450 P. 2d 10; *Wilburn v. Boeing Airplane Co.*, 188 Kan. 722, 729, 366 P. 2d 246.

The foregoing rule is applicable to employees of a contractor who has agreed to undertake a part of the trade or business of his principal. K. S. A. 44-503 (*a*) provides, in pertinent part:

"Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; . . ."

Since the defendants as principals in this case had undertaken to

have work executed by an independent contractor, the only question we have for determination is whether the work to be performed under the contract is part of the principals' "trade or business," or an integral part thereof or usually performed by the principals.

This court has had many occasions to consider the phrase, "which is a part of his trade or business." Many of these cases were considered and analyzed in *Hanna v. CRA, Inc.,* 196 Kan. 156, 409 P. 2d 786, where it was found:

"This court has laid down two rather definite tests by which to determine whether the work covered by a contract is part of the principal's trade or business, *i.e.,* (1) is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?

"If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's 'trade or business,' and the injured employee[']s sole remedy against the principal is under the Workmen's Compensation Act." (p. 159.)

The cases were again reviewed in a well annotated opinion of *Watson v. Dickey Clay Mfg. Co.,* supra, p. 375; *Bendure v. Great Lakes Pipe Line Co.,* 199 Kan. 696, 433 P. 2d 588, p. 700, and it is unnecessary to again re-analyze the authorities on which the opinions in the mentioned cases were based. The district court concluded the work involved in the acidization of the salt water disposal well was necessarily inherent in and an integral part of the appellees' trade or business. We agree.

The defendants were engaged in the business of producing oil and gas and in maintaining and operating salt water disposal wells. There would be no question that in order for them to produce oil, it was necessary to separate the oil from the salt water and dispose of the salt water in the manner provided by statute, so as to prevent damage by reason of its escape onto the land or into streams of others. (See K. S. A. 55-121 and 55-901.) It therefore follows that the disposal of salt water is necessarily inherent in and an integral part of the oil producing business and normally performed by employees of defendants.

Inasmuch as the deceased, Jim Voth and Robert Anderson, were employees of Acid Engineers, Inc., when the acidization of the salt water disposal well was attempted, they were covered by the Workmen's Compensation Act and were statutory employees of

the defendants. Their exclusive remedy against the defendants was under the Workmen's Compensation Act.

The plaintiffs also argue that the trial court should not have sustained the defendants' motion for summary judgment because there are material issues of fact which have not been decided. This argument is without merit. In the instant case, the parties engaged in extensive discovery. In *Hastain v. Greenbaum,* 205 Kan. 475, 470 P. 2d 741, we held that a motion for summary judgment should be granted forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue of any material fact, and that the moving party is entitled to judgment as a matter of law. All the facts necessary for determination of the controlling question of law in this case are in the record.

The judgment of the trial court is affirmed.