No. 48,257

LAVON K. FUGIT, Administratrix of the Estate of Louis J. Fugit, Surviving Spouse and Heir at Law, Individually and as Next Friend of ELOISE DALORES KING, ROBERT LOUIS FUGIT, DONALD BRUCE FUGIT and THERESA CHERYL SCHMERSE, Heirs at Law, *Appellants*, v. UNITED BEECHCRAFT, INC. and JACK CREAMER, *Appellees*.

(564 P.2d 521)

Opinion filed May 14, 1977.

*Ray H. Painter*, of Tulsa, Oklahoma, argued the cause, and *Davis S. Carson*, of Sowers, Carson and Johnston, P.A., of Wichita, was with him on the brief for the appellants.

*Larry A. Withers*, of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, argued the cause, and *Richard C. Hite*, of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action filed by the administratrix and heirs of Louis J. Fugit seeking to recover damages for conscious pain and suffering and for wrongful death allegedly caused by the negligence of the defendants-appellees, United Beechcraft, Inc., and Jack Creamer. The trial court sustained the defendants' motion for summary judgment on the grounds that United Beechcraft was a statutory employer of Fugit under the Kansas workmen's compensation act and therefore the plaintiffs' exclusive remedy was under that act. The sole issue to be determined on the appeal is whether as a matter of law the decedent Louis J. Fugit was a statutory employee of United Beechcraft and there-

fore Fugit's administratrix and heirs were barred from bringing this action at common law.

After the case was filed extensive discovery conducted by the parties brought to light certain undisputed facts which the district court used as a basis for granting summary judgment. Essentially the facts in the case are as follows: Beech Aircraft Corporation is a manufacturer of aircraft located at Mid-Continent Airport in Wichita. United Beechcraft, Inc., is a subsidiary corporation of Beech Aircraft and its primary operations are concerned with the sale, service, and maintenance of Beech aircraft. It is described in the record as a "fixed base operator." United Beechcraft does repair work including the total rebuilding of aircraft. It gives flight instruction and, in addition, does modification work on old aircraft to make them more airworthy and in compliance with the standards of the Federal Aviation Agency.

In early 1972 United Beechcraft entered into a written contract with Beech Aircraft to develop a kit for modification of T-34 aircraft. This modification consisted of replacing the original engine and propeller. Under the contract Beech agreed to furnish the airplane, engine, and propeller and to make available blueprints of the T-34. United Beechcraft agreed to provide "all Engineering and development, including necessary drawings, dynamic tests, structural tests, flight tests, analysis, reports and manuals as required to meet Beech level of quality and reliability, and to obtain FAA . . . approval." United Beechcraft contracted to complete the design, manufacture the set of kit parts, modify the one airplane by installing the kit, and run the various tests mentioned above. United Beechcraft did not have engineers employed to perform the necessary engineering work or flight testing under its contract with Beech. United Beechcraft therefore entered into a subcontract with Product Development Group by which Product Development Group became responsible for the engineering design work for the installation of the new engine, for the preparation of paperwork necessary for FAA approval of the airplane, and for the various tests mentioned above. United Beechcraft remained responsible to perform the actual mechanical work and the installation of parts. The decedent, Louis J. Fugit, was an engineer employed by Product Development Group. Among other duties it was his responsibility to conduct

flight tests of the modified T-34 aircraft in order to check out the plane for FAA certification. On July 19, 1972, Fugit participated in a flight test of the T-34. The pilot was defendant, Jack Creamer, an employee of United Beechcraft. During the course of the flight Fugit suffered a heart attack and died shortly after the plane landed. Following Fugit's death this common-law action was brought on the theory that Fugit's death was the result of the negligence of Jack Creamer, acting in the course of his employment with United Beechcraft.

The undisputed evidence shows that modification of aircraft, including flight testing, has been a part of the work which has been carried out by United Beechcraft over the years. Gomer W. Jones, President of Product Development Group, testified that his company had been involved as a subcontractor in contracts with United Beechcraft involving modifications of existing aircraft more than twenty times since 1961. It is clear from the deposition testimony presented to the trial court that while modification work has not been a primary or major part of the business of United Beechcraft, it is a type of work performed from time to time as a part of United Beechcraft's trade or business.

K.S.A. 44-501, commonly referred to as the exclusive remedy provision of the workmen's compensation act, provides that no employer or other employee of such employer shall be liable for any injury for which compensation is recoverable under the workmen's compensation act. Under this statute the well established rule is that if a workman can recover benefits from an employer under the workmen's compensation act for an injury, he cannot maintain a common-law action against that employer for damages based on a theory of negligence. (*Fritzson v. City of Manhattan*, 215 Kan. 810, 528 P. 2d 1193; *Anderson v. Beardmore*, 210 Kan. 343, 502 P. 2d 799.) This exclusive remedy provision also bars a common-law action against another employee of such an employer. (*Anderson v. Beardmore*, supra.)

K.S.A. 44-503 (*a*) is the section of the Kansas workmen's compensation act which extends the application of the act to certain contractors who are not the immediate employers of injured workmen. 44-503 (*a*) provides in pertinent part as follows:

"Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he had

contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; . . ."

It has been stated that the principal purpose of 44-503 (*a*) is:

". . . to give to employees of a contractor who has undertaken to do work which is a part of the trade or business of the principal, such remedy against the principal as would have been available if they had been employed directly by the principal, and to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business." (*Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, Syl. 4, 167 P. 2d 613.)

In *Woods v. Cessna Aircraft Co.*, 220 Kan. 479, 553 P. 2d 900, we recently stated the tests to be applied in determining whether work covered by a subcontract is a part of the principal contractor's trade or business. They are as follows:

". . . (1) Is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) Is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal? If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's 'trade or business,' and the injured employee's sole remedy against the principal is under the Workmen's Compensation Act." (Syl. 2.)

See also, *Hanna v. CRA, Inc.*, 196 Kan. 156, 409 P. 2d 786.

Applying these primary tests to the undisputed facts in this case it is clear that the district court was correct in finding that the modification work contracted to be performed for Beech Aircraft by United Beechcraft was an integral part of the latter's trade or business. K.S.A. 44-503 (*a*) does not require the work undertaken to be the primary work of the principal contractor. It is sufficient if such work is a part of the overall operations of the principal contractor. A principal contractor may engage in several types of business activity, any one of which may constitute an integral part of its trade or business. Furthermore, it is important in this case to note that the flight test being performed by Louis J. Fugit at the time of his death was work which United Beechcraft had specifically contracted to perform on behalf of Beech Aircraft Corporation. It is undisputed that United Beechcraft has been

engaged in modification of aircraft for Beech Aircraft over a period of at least ten years. Furthermore there was undisputed testimony from both United Beechcraft and Product Development Group employees that the engineering and FAA certification work being done by Product Development Group was a necessary part of the work to modify the T-34 aircraft. It must be concluded on the basis of these undisputed factual circumstances that Louis J. Fugit was a statutory employee of United Beechcraft, Inc., under the provisions of 44-503 (a).

The judgment of the district court is affirmed.