No. 59,295

Henry Hollingsworth, *Appellant,* v. Fehrs Equipment Co. of K.C., a Kansas Corporation, and Farmland Industries, Inc., a Kansas Corporation, *Appellees.*

(729 P.2d 1214)

Opinion filed December 5, 1986.

*H. David Blair*, of Batesville, Arkansas, argued the cause, and *Leo Logan*, of Kansas City, and *Stewart Lambert*, of Cherokee Village, Arkansas, were with him on the briefs for appellant.

*Lee M. Smithyman*, of Weeks, Thomas & Lysaught, Chartered, of Kansas City,

argued the cause, and *Edmund S. Gross*, of the same firm, and *John E. Joslin*, of Farmland Industries, Inc., of Kansas City, Missouri, were with him on the brief for appellee Farmland Industries, Inc.

The opinion of the court was delivered by

McFARLAND, J.: Plaintiff Henry Hollingsworth was injured in an industrial accident and brought this action seeking damages therefor. The district court entered summary judgment in favor of defendant Farmland Industries, Inc., on the basis that said corporation was a statutory employer of plaintiff and, hence, immune from liability in the negligence action herein. Plaintiff appeals from this entry of summary judgment.

The uncontroverted facts may be summarized as follows. In 1984, Cooperative Farm Chemicals Association (CFCA) operated a facility at Lawrence, Kansas, for the production of nitrogen fertilizers from natural gas. At that time, CFCA was a separate corporate entity with 75 percent of its stock being owned by defendant Farmland Industries, Inc., (Farmland) and 25 percent being owned by Missouri Farmers Association. Operation of the Lawrence plant was CFCA's only activity. The entire output of the plant was distributed to its two shareholders proportionate to their shares in CFCA. Approximately 270 people were employed by CFCA to operate the plant, including some 90 maintenance personnel. The facility contained complex chemical processing equipment which included reactors, boilers, and cooling towers.

Farmland is an agricultural cooperative supplying some 500,000 midwest farmers with products needed for agricultural pursuits. In May 1985, CFCA was merged into Farmland.

Operation of the Lawrence facility requires periodic shut-downs for normal maintenance and to effect necessary repairs. This procedure is known as a "major turnaround." On August 29, 1984, CFCA resumed operations following completion of a major turnaround. On September 2, 1984, a significant leak occurred in the north waste heat boiler, necessitating a complete plant shutdown. The boiler is known in the business as a Kellogg 101C. The need to restore the plant to its operational status as quickly as possible necessitated repair work on a round-the-clock basis.

John T. Cody Corporation (Cody), an independent contractor, was employed to do the repair work. Cody began work immediately but soon discovered that the needed repairs were more

extensive than originally contemplated and that the "tube bundle" on the 101C boiler would require replacement. Spare tube bundles were kept at the Lawrence plant for such a purpose. Tube bundles are large pieces of equipment weighing several tons and require a crane to move them. To replace a tube bundle the old unit is first removed. The new bundle is then lifted by a crane onto a low flatbed trailer which is then driven to the installation site and ultimately lifted by a crane into the boiler housing. The tube bundle is a component part of the boiler and replacement thereof does not involve replacement of the entire boiler.

On September 6, 1984, a Warner Swasey Model 4435 crane owned by CFCA and being operated by one of its employees, Francis Zeller, was moving toward the replacement tube bundle preparing to lift same onto a flatbed trailer. As the CFCA crane operator began preparing for the lift, a steel cable connected to a large hook and ball on the crane separated causing the hook and ball to fall onto plaintiff who was a boilermaker employed by Cody. Plaintiff was a part of a crew whose job it was to rig the container in which the spare tube bundle was located in order that the crane could lift it onto the flatbed trailer.

Plaintiff brought this action against Farmland (as successor to CFCA) alleging plaintiff's injuries had been caused by Farmland's negligence. Fehrs Corporation was also named a defendant as manufacturer of the crane.

Defendant Farmland moved for summary judgment on the ground that Farmland was a statutory employer of the plaintiff, under K.S.A. 44-503, and therefore entitled to tort immunity under the Kansas Workmen's Compensation Act. On February 5, 1986, summary judgment was granted to defendant Farmland. Fehrs was subsequently dismissed upon plaintiff's motion and is, therefore, no longer a party herein. Plaintiff challenges the propriety of the entry of summary judgment in this appeal.

The general rules relevant to the challenge to the summary judgment herein may be summarized as follows. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687,

Syl. ¶ 5, 695 P.2d 444 (1985); *Lostutter v. Estate of Larkin*, 235 Kan. 154, 164, 679 P.2d 181 (1984). When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, Syl. ¶ 2, 710 P.2d 1297 (1985); *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 4, 662 P.2d 1203 (1983).

Some additional background is necessary before turning to specific contentions herein.

K.S.A. 1985 Supp. 44-501(b) provides:

*"Except as provided in the workmen's compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workmen's compensation act* nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workmen's compensation is payable by such employer." (Emphasis supplied.)

This statute is commonly referred to as the exclusive remedy provision of the Workmen's Compensation Act, K.S.A. 44-501 et *seq.* If a worker can recover benefits for an injury from an employer under the provisions of the Workmen's Compensation Act, its remedy is exclusive, precluding a common-law negligence action for damages against the employer. *Zehring v. Wickham*, 232 Kan. 704, Syl. ¶ 3, 658 P.2d 1004 (1983); *Fugit, Administratrix v. United Beechcraft, Inc.*, 222 Kan. 312, 314, 564 P.2d 521 (1977). This furthers the policy and purpose of the Workmen's Compensation Act, which is to provide an established source of benefits to the employee for injuries arising out of and in the course of his employment, and to shift from the employee to the industry certain burdens incidental to modern industrial operations. *Duncan v. Perry Packing Co.*, 162 Kan. 79, 84, 174 P.2d 78 (1946). Further, the provisions of the Act are to be liberally construed to bring workers under the Act whether or not it is desirable for the specific individual's circumstance. *Zehring v. Wickham*, 232 Kan. 704, Syl. ¶ 5.

Attention is now directed to K.S.A. 44-503(a), which provides:

"Where any person (in this section referred to as principal) *undertakes to execute any work which is a part of his trade or business or which he has contracted to perform* and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the

whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under the workmen's compensation act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workmen's compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed." (Emphasis supplied.)

This section extends the application of the Workmen's Compensation Act to certain individuals or entities who are not the immediate employers of injured workers.

In *Hanna v. CRA, Inc.*, 196 Kan. 156, 409 P.2d 786 (1966), this court stated the following test for determining whether or not the injury-producing work is part of the principal's trade or business under K.S.A. 44-503(a):

"(1) [I]s the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) [I]s the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?

"*If either of the foregoing questions is answered in the affirmative* the work being done is part of the principal's 'trade or business,' and the injured employee's sole remedy against the principal is under the Workmen's Compensation Act." 196 Kan. at 159-60. (Emphasis supplied.)

See *Woods v. Cessna Aircraft Co.*, 220 Kan. 479, 553 P.2d 900 (1976).

In entering summary judgment for Farmland, the district court reasoned as follows:

"Was the work being performed by Cody and the plaintiff necessarily inherent in and an integral part of the principal's trade or business? It seems that this question clearly must be answered in the affirmative notwithstanding the attempt by plaintiff and Bendix to isolate Cody's activity to that of rebuilding rather than replacing a leaky tube bundle. They would have the court place Cody in a position similar to that of a manufacturer of tube bundles. This is simply not the case. Part of Cody's duties were to rebuild the tube bundle after it was removed. Cody's primary duty, however, was to remove the leaky bundle and install the replacement bundle so the plant could start back up as quickly as possible. This was the work that Cody was hired to do on CFCA's premises. Cody would later rebuild the tube bundle off CFCA's premises at its own leisure.

"The 101 C waste heat boiler was part of the integral equipment necessary to the operation of CFCA's ammonia plant. When the leak developed in the tube bundle the entire plant had to be shut down and a twenty-four hour repair crew was hired to get the plant back into operation as quickly as possible. Contrary to

the contentions made by plaintiff and Bendix, I do not believe it makes any difference whatsoever whether the tube bundle and/or the entire heat waste boiler needed to be repaired, rebuilt or replaced with a new unit. It is only logical to anticipate leaks will develop in this type of equipment and that it will eventually have to be repaired, rebuilt or completely replaced. Rebuilt or new equipment, whether required for replacement purposes or for increased capacity, are incidents essential to the proper maintenance of an ammonia plant or like facility. *Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 208, 231 P.2d 239 (1951)."

In essence, the district court found that the first test of *Hanna* had been met under the uncontroverted facts and, hence, Farmland was the statutory employer of plaintiff as a matter of law and entitled to summary judgment. Plaintiff does not seriously contend that maintenance of the boiler in question was not an integral part of Farmland's business. Rather, plaintiff attempts to modify the *Hanna* test to require both test questions be answered affirmatively before a finding of statutory employment may be made. Plaintiff argues that the evidence showed that operators of plants such as the one herein usually employ independent contractor specialists such as plaintiff's employer to replace tube bundles in boilers and, hence, the second test of *Hanna* was not met. As noted by the district court, Cody would, at some time in the future, repair the leaking tube bundle.

We see no valid reason to modify the either/or aspect of the *Hanna* test. A primary purpose of K.S.A. 44-503(a) is to prevent employers from evading liability under the Act by the device of contracting with outsiders to do work which they have undertaken as a part of their trade or business. *Zehring v. Wickham*, 232 Kan. at 707.

A third of the plant's 270 employees were maintenance personnel who had, shortly prior to the incident herein, completed major maintenance activities on the plant's equipment which involved a shutdown of the plant. Plaintiff's employer was brought in when a leak in a boiler again shut the plant down and plant officials were desirous of getting the plant operational again as soon as possible. Whereas the plant's maintenance personnel may never have replaced tube bundles on this particular type of boiler, they had engaged in replacement of tube bundles in some other boilers. However, at the time Cody was brought in no one knew the tube bundle would have to be replaced. Nevertheless, this aspect of the facts really concerns

only the second test of *Hanna*. Where the first test is met, there is no need to be concerned with the alternative test.

The result reached by the district court herein is consistent with that reached in a number of our prior cases.

*Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 231 P.2d 239 (1951), is well summarized in its rather unusual syllabus as follows:

"The defendant, authorized, licensed, and operating as a public utility and engaged in the production, sale, and transmission of electric power, contracted for the erection of a new building in addition to buildings already on its premises and the installation of steam boilers, turbines, generators and other equipment necessary and essential to the production, sale, and transmission of electricity. The contractors entered into an agreement with a subcontractor to perform a part of the work. Just as a workman, employed by the subcontractor, had finished cutting a piece of iron for a pipe hanger in a room of the defendant's Tecumseh plant and was ready to leave that room and install the hanger in connection with the construction of the new building and the installation of equipment therein at such plant he was seriously injured as a result of an explosion which occurred within the plant. The workman brought an action under the common law against the defendant public utility, founded on negligence to recover damages for the injuries he had sustained. Held, (1) the work in which the plaintiff was engaged at the time of the explosion was a part of the defendant's trade or business within the meaning of the subcontracting section of the Workmen's Compensation Act (G.S. 1935, 44-503, now G.S. 1949, 44-503) and (2) the trial court properly sustained a motion for judgment on the pleadings and rendered judgment against plaintiff on the ground that under the facts disclosed by all the pleadings plaintiff and defendant were subject to the Workmen's Compensation Act and the plaintiff's sole and exclusive remedy was that provided by its terms."

*Fugit, Administratrix v. United Beechcraft Inc.*, 222 Kan. 312, involved the following facts. Product Development Group had a contract with United Beechcraft to develop an engineering design for modification of the T-34 aircraft. The decedent, a Product Development employee, suffered a fatal heart attack during a test flight. The trial court granted United Beechcraft's motion for summary judgment on the ground that decedent was a statutory employee of United Beechcraft under the Workmen's Compensation Act. This court affirmed, holding that the modification work was an integral part of United Beechcraft's trade or business, stating:

"K.S.A. 44-503(a) does not require the work undertaken to be the primary work of the principal contractor. It is sufficient if such work is a part of the overall operations of the principal contractor." 222 Kan. at 315.

In *Zehring v. Wickham*, 232 Kan. 704, defendant was a glazing contractor who was building an addition to its facilities. Much of

the construction work was contracted out. Plaintiff, an employee of an electrical subcontractor, was injured on the job and brought a negligence action against Wickham. The district court held plaintiff was the statutory employee of Wickham and entered summary judgment in the latter's favor. In affirming the district court, we stated:

"In the case at bar the trial court ruled as a matter of law Zehring was a statutory employee of Wickham. The Court of Appeals reversed. We agree with the trial court and find the evidence in support of that position substantial. Admittedly, Wickham did not normally construct buildings and was not a general building contractor. *It had, however, carried on its own construction in the past, constructing a building in 1961 and an addition in 1977. As such the 1978 addition, built to house a piece of machinery integral to the business, can be seen as a part of Wickham Glass Company's overall operation.* Further, it must be remembered the provisions of the workers' compensation act are to be liberally interpreted in such a way as to bring a worker under the act whether or not desirable for the specific individual's circumstance." (Emphasis supplied.) 232 Kan. at 709.

See *Mays v. Ciba-Geigy Corp.* 233 Kan. 38, 661 P.2d 348 (1983), and *Woods v. Cessna Aircraft Co.*, 220 Kan. 479.

We conclude the uncontroverted facts clearly support the district court's determination herein that the work in which Cody (the independent contractor) and plaintiff (Cody's employee) were engaged at the time of the injury was necessarily inherent in and an integral part of the principal's trade or business. Therefore, the district court did not err in concluding Farmland was the statutory employer of plaintiff and entitled to the entry of summary judgment in its favor in this negligence action.

The judgment is affirmed.