No. 60,563

ROBERT DANES, *Appellant,* v. ST. DAVID'S EPISCOPAL CHURCH, *Appellee.*

(752 P.2d 653)

Opinion filed March 25, 1988.

*Thomas Odell Rost,* of Rost, Rost & Griffeth, of Topeka, argued the cause, and *Glenn H. Griffeth,* of the same firm, was with him on the brief for appellant.

*Jeanne Gorman Rau,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The plaintiff, Robert Danes, filed the present civil action against the defendant, St. David's Episcopal Church, alleging that he had received personal injuries as a result of the defendant's negligence. Plaintiff appeals from an order of the district court granting summary judgment in favor of the defendant.

Plaintiff is an associate professor of music at Washburn University, Topeka, Kansas, where he has been employed since 1973. In 1975, plaintiff entered into an oral agreement with the

defendant, St. David's Episcopal Church, under which he would undertake to provide the services of organist and choirmaster for the defendant. On October 19, 1981, plaintiff and defendant entered into a written agreement governing plaintiff's services for defendant.

On October 26, 1984, plaintiff filed a petition in Shawnee County District Court, giving rise to the present action. Plaintiff alleges in the petition that, while making adjustments to the organ at the church, he was injured when a ladder furnished by defendant collapsed, thereby causing him severe injuries. The defendant filed a motion for summary judgment, contending that plaintiff was an employee of the defendant and not an independent contractor.

The district court granted summary judgment in favor of defendant, ruling that plaintiff was an employee and not an independent contractor and, as such, his exclusive remedy was pursuant to the Workmen's Compensation Act. The memorandum decision was signed by the district court and filed with the court on September 2, 1986. Although the memorandum decision does not indicate the method by which the parties were served with notice of the court's decision, the parties agree that a copy was mailed to counsel for the parties.

On September 15, 1986, plaintiff filed a motion for new trial. The district court overruled the motion on January 15, 1987. Plaintiff filed a notice of appeal with the district court on February 12, 1987.

We must first determine if this court has jurisdiction to hear this case on appeal. The defendant contends we do not due to plaintiff's failure to timely file his motion for new trial. K.S.A. 60-2103(a) requires that civil appeals from a district court must be taken within 30 days of the entry of judgment. The statute also provides that the running of the time limit for an appeal may be terminated by timely filing a motion to alter or amend a judgment, or a motion for new trial. In the present case, although the plaintiff filed a motion for new trial, the motion in substance was a motion to alter and amend the judgment of the district court, and the district court essentially treated the motion as a motion to alter and amend. Under K.S.A. 60-259(f), a motion to alter or amend a judgment must be served and filed not later than 10 days after entry of judgment.

The plaintiff did not file the present appeal within the 30-day time limit required by statute. Whether the time limit contained in K.S.A. 60-2103(a) was tolled by plaintiff's postjudgment motion depends upon the timeliness of that motion. If plaintiff's postjudgment motion, which effectively sought to alter or amend the judgment, was not timely filed, this court is without jurisdiction to hear the present appeal.

Plaintiff argues that his postjudgment motion was timely and relies upon Supreme Court Rule 134 and K.S.A. 60-206. Supreme Court Rule 134 governs the issuance of notice of a district court's rulings:

"Whenever a judge shall make a ruling on a motion or application of any kind and there are parties affected who have appeared in the action but who are not then present, either in person or by their attorneys, the judge shall cause written notice of such ruling to be mailed to the parties or attorneys forthwith." (1987 Kan. Ct. R. Annot. 72).

K.S.A. 60-206(e) provides:

"Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him or her and the notice or paper is served upon him or her by mail, three (3) days shall be added to the prescribed period."

The defendant argues that K.S.A. 60-206(e) does not serve to expand the time in which the plaintiff might file a postjudgment motion. Defendant contends that subsection (e) applies only where a party has the right or the obligation to do some act within a certain time period "after the service of a notice or other paper," while K.S.A. 60-259 requires that motions for new trial and motions to alter or amend a judgment must be made not later than 10 days "after entry of the judgment." Defendant, therefore, argues that K.S.A. 60-206(e) did not give plaintiff an additional three days in which to respond by filing a postjudgment motion and, as a result, his motion was filed out of time. We do not agree.

K.S.A. 60-258 governs the entry of judgment. The statute provides, in part:

"No judgment shall be effective unless and until a journal entry or judgment form is signed by the trial judge and filed with the clerk of the court. . . .

"When judgment is entered by judgment form the clerk shall serve a copy of the judgment form on all attorneys of record within three days. Service may be

made personally or by mail. Failure of service of a copy of the judgment form shall not affect the validity of the judgment."

While "entry of the judgment" occurs upon the signature and filing of the district court's decision, this court has recognized that the timing requirements for postjudgment motions and for appeals may begin to run not upon the entry of judgment but upon notice of the entry of judgment. In *Daniels v. Chaffee*, 230 Kan. 32, 630 P.2d 1090 (1981), counsel was not notified of the filing of the journal entry until six months after it was filed by the trial judge. The plaintiff contended that such failure to notify did not extend the appeal time. We held:

"Applying a liberal interpretation of K.S.A. 60-258 and construing that statute along with the other statutes mentioned and Rule No. 134, we hold that, where a trial court enters judgment without giving notice to the parties or counsel as required by K.S.A. 60-258 and Rule No. 134, a valid judgment is entered which is subject, however, to being set aside when attacked by post-judgment motions and proceedings. The time for filing post-judgment motions or taking an appeal from a final judgment entered without notice commences to run when there has been a compliance with K.S.A. 60-258 and Rule No. 134." 230 Kan. at 38.

The defendant attempts to distinguish *Daniels* on the basis that the trial court in *Daniels* had failed to mail notice of its decision, as required by K.S.A. 60-258, while the clerk of the district court in the present case mailed notice of the court's decision. This is a factual distinction which ignores the policy concerns we expressed in *Daniels*. We stated: "In each individual case, a rule of reason must be applied to insure that the rights of the parties are protected and that they are not denied their legal rights through forces beyond their control." 230 Kan. at 38. Although a literal reading of the statutes involved in *Daniels* would have required a finding that the post-trial motion was not timely filed, we rejected such a literal interpretation, noting that the code of civil procedure must be construed "to secure the *just*, speedy, and inexpensive determination of every action or proceeding." 230 Kan. at 37; K.S.A. 60-102. In addition, under K.S.A. 60-265, the code "is to be applied with flexibility to see that justice is done in a particular case." 230 Kan. at 37. In *Daniels*, we held that the interests of justice and a liberal interpretation of the statutes required indefinitely expanding the time for the filing of postjudgment motions until the trial court has complied

with the provisions of K.S.A. 60-258 and Supreme Court Rule 134 requiring the service of notice to the parties to the action. In the present case, the issue does not involve an indefinite extension of the time in which to file postjudgment motions, but the three-day extension provided by K.S.A. 60-206(e). The same interests of insuring a just resolution of every action which required a liberal interpretation of the statutes in *Daniels* also requires that K.S.A. 60-206(e) be applied in the present case.

In *Atkinson v. U.S.D. No. 383*, 235 Kan. 793, 684 P.2d 424 (1984), we held that, when a board of education mails a notice of its decision to a teacher, the time for the teacher to appeal the board's decision does not begin to run until the decision is mailed. 235 Kan. at 798. We also held that K.S.A. 60-206(e) applies and provides a 3-day extension of time to the normal period during which the teacher may appeal the board's decision. 235 Kan. at 799. Although *Atkinson* involves different statutes than those now before us in the present case, the rationale is applicable to the present case. K.S.A. 60-2101(d) governs appeals from administrative boards and requires the appeal to be filed within 30 days of the "entry" of the board's judgment. K.S.A. 60-2101(d) is, therefore, analogous to K.S.A. 60-259, which requires the filing of postjudgment motions to be not later than ten days after "entry of the judgment." In *Atkinson*, however, this court, relying upon K.S.A. 72-5443, which requires a school board's decision to be submitted to the teacher, determined that the time for the filing of an appeal by the teacher did not commence until the board's judgment had been submitted to the teacher. We said:

"The Board contended that subsection (*e*) should not be applied because service of a notice is not required as a condition for an appeal. The majority of the Court of Appeals reasoned K.S.A. 72-5443 required the Board to submit its decision to the teacher. They had determined that it is the submission which triggers the right to appeal. The use of the word *submitted* rather than *served* in K.S.A. 72-5443 was of little consequence. It was the submission of the Board's decision by mail which required plaintiff to file her notice of appeal within a 30-day period for appeal or forfeit the right. Therefore, when the Board submitted its decision to the teacher by mail it brought into play the provisions of K.S.A. 60-206(*e*), which increased the 30-day filing period to 33 days. It is held that when notice of a school board's decision as required by K.S.A. 72-5443 is submitted by mail, and it is the submission of this decision which commences the

time to take an appeal, the three-day extension of time permitted by K.S.A. 60-206(*e*) applies." 235 Kan. at 799.

In the present case, K.S.A. 60-258 and Supreme Court Rule 134 require that notice be given to the parties involved in the litigation. Thus, although different statutes are involved, we find the rationale expressed in *Atkinson* to be persuasive when applied to the present case and conclude that, where notice of the entry of judgment is mailed in compliance with K.S.A. 60-258 and Rule 134, the time for filing postjudgment motions or taking an appeal starts to run when the notice is mailed, and the three-day extension as provided in K.S.A. 60-206(e) applies. Since plaintiff's postjudgment motion was filed within 13 days of the trial court's decision, the postjudgment motion effectively terminated the running of the time for the plaintiff to file an appeal. This court therefore has jurisdiction to address the present appeal, and we turn now to the primary issue raised by the plaintiff in this appeal.

Plaintiff contends that the district court erred in granting summary judgment on behalf of the defendant. The district court adopted as findings of fact the following contentions of uncontroverted facts cited by the defendant:

"1. St. David's Episcopal Church contracted with plaintiff Robert Danes for his services as organist-choir master at the church. . . .

"2. On October 19, 1981, the vestry of St. David's Episcopal Church, which negotiates contracts for defendant, entered into a written agreement with plaintiff Robert Danes for the position of organist/choirmaster at the church at a salary of $555.00 per month retroactive to July 1, 1981. . . .

"3. The original contract between plaintiff and defendant was renewed on a yearly basis until January 1, 1983, when the present written contract superseded the original written contract. . . .

"4. Aside from the amounts of compensation and the scheduling of summer leave time, the original contract was essentially the same as the present one dated January 1, 1983. . . .

"5. Reverend Crews became pastor at St. David's Episcopal Church on September 15, 1982. . . .

"6. As Pastor of St. David's Episcopal Church, the Reverend William Crews has ultimate authority and control over the selection of music and the details of its performance for St. David's Church. . . .

"7. According to the Canons of the Episcopal Church:

" 'It shall be the duty of every Minister to see that music is used as an offering to the glory of God and as a help to the people in their worship in accordance with the Book of Common Prayer and as authorized by the rubrics or by the

General Convention of this Church. To this end, the Minister shall have final authority in the administration of matters pertaining to music. In fulfilling this responsibility the Minister shall seek assistance from persons skilled in music. Together they shall see that that music is appropriate to the context in which it is used.'

. . . .

"8. Upon Reverend Crews' arrival at St. David's, he instituted weekly staff meetings with Dr. Danes. . . .

"9. The Rector of St. David's always gave instructions for the particular services to be conducted at the church on a weekly basis and how the services were to be performed. . . .

. . . .

"11. In 1982 and specifically December of 1982, the Rector of St. David's selected hymns for each service. . . .

"12. The Rector gives signals or cues from the altar at the beginning of liturgical chants. . . .

"13. In the relationship between plaintiff and defendant, the final decision in the selection and approval of a substitute organist is left to the defendant through the rector. . . .

"14. The rector determines at what time Danes is to play the offertory hymns, anthems etc. . . .

"15. Plaintiff's contract with St. David's specified the services at which he was to perform. . . .

"16. The rector has canonic charge of all services and makes final decisions concerning the need for an anthem, offertory, choir music, etc. including the amount, nature and type of music. . . .

. . . .

"18. The church pays for a substitute during Danes' summer vacation as required by the parties' contract. . . .

"19. The organ located at St. David's Church belongs to the defendant. . . .

"20. Defendant has supplied at its own cost the organ which plaintiff plays pursuant to this agreement with the defendant. . . .

. . . .

"31. Reverend Crews had no knowledge or notice of any prior falls from the ladder on which plaintiff claims to have been injured on December 24, 1982. . . .

"32. Plaintiff was not aware of any falls from the ladder on which he was injured prior to December 24, 1982."

The district court also adopted the following contentions of uncontroverted facts cited by the plaintiff:

"1. That Plaintiff has previously worked as a consultant for churches. . . .
"2. That at times Plaintiff uses or has used the organ at St. David's for private lessons. . . .

. . . .

"4. That the vestry approved the Plaintiff's recommendation for the builder of the church organ and relied upon Plaintiff through the stages of the contract. . . .

. . . .

"6. That the church consults or consulted with Plaintiff as to what repairs are needed on the organ and who should perform them. . . .

. . . .

"8. That guest organist or recitalists could not be engaged to perform musical functions without prior approval by the regular organist. . . .

. . . .

"10. That prior to December 1982 Plaintiff was not called in or asked to attend a meeting of the vestry to discuss the organ music. . . .

"11. That Plaintiff had selected the organ music and choral music for the 1984 Christmas Eve services at St. David's. . . .

"12. That Defendants had previously provided a different ladder for Plaintiff's use. . . .

. . . .

"14. That Plaintiff had not seen the ladder in question prior to December 24, 1984 . . . and had not used said ladder prior to December 24, 1984. . . .

"15. That Mr. Robert Alward informed Plaintiff that he had obtained the ladder in question. . . .

"16. That Plaintiff considered himself an independent contractor. . . .

"17. Defendant did not set aside or pay any withholdings from Defendant's compensation. . . .

"18. That Plaintiff was paid at a set annual rate. . . .

"19. That Plaintiff's W-4 forms from Defendant indicated that compensation paid was not employee compensation. . . .

. . . .

"21. Defendant did not and does not provide any health insurance benefits for Plaintiff. . . ."

Finally, the district court also found the following facts to be uncontroverted:

"1. Reverend Crews, rector of St. David's Episcopal Church, discussed matters concerning volume and tempo of music performed for church services with the plaintiff.

"2. The plaintiff received two Sundays sick leave per year with pay.

"3. The defendant could discharge the plaintiff upon ninety days notice."

Based upon these facts, the district court concluded that plaintiff was an employee and not an independent contractor, and granted summary judgment in favor of the defendant. On appeal, plaintiff first takes issue with several of the factual determinations made by the district court. Most of the determinations with which the plaintiff now takes issue are based upon the contentions of uncontroverted fact contained in the defendant's original motion for summary judgment. A review of the

record indicates that the plaintiff did not properly respond to these contentions of uncontroverted fact in his reply to the defendant's motion for summary judgment, and the district court did not err in adopting these contentions within its findings of fact. Supreme Court Rule 141(b) (1987 Kan. Ct. R. Annot. 79) requires that a party opposing a motion for summary judgment present a memorandum setting forth the facts and contentions, including "a concise summary of conflicting testimony or evidence." In *Reubke v. Globe Communications Corp.*, 241 Kan. 595, 738 P.2d 1246 (1987), this court held that, when a party opposing a motion for summary judgment fails to comply with Rule 141(b), the district court is vested with the discretion to deem that the opposing party has admitted the uncontroverted contentions of fact and that the district court's sound discretion will not be disturbed on appeal without a clear showing of abuse. 241 Kan. at 604. In the present case, in the plaintiff's original memorandum in opposition to the defendant's motion for summary judgment, the plaintiff, in most instances, merely alleged that the cited contentions of uncontroverted fact were "controverted" or "contested," without any citation to any factual authority. The trial court did not abuse its discretion and correctly found there was no genuine issue as to any material fact.

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hollingsworth v. Fehrs Equip. Co.*, 240 Kan. 398, 400, 729 P.2d 1214 (1986); *Peoples Nat'l Bank & Trust v. Excel Corp.*, 236 Kan. 687, 695, 695 P.2d 444 (1985); *Lostutter v. Estate of Larkin*, 235 Kan. 154, 164, 679 P.2d 181 (1984). An appellate court reviewing a grant of summary judgment must read the record in the light most favorable to the party who defended against the motion for summary judgment. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 4, 662 P.2d 1203 (1983); *Dugan v. First Nat'l Bank in Wichita*, 227 Kan. 201, 206, 606 P.2d 1009 (1980). We have held that, if the general rules relating to summary judgment are met, summary judgment may serve as an appropriate vehicle for resolving an agent's status as an employee under the provisions of the Workmen's Compensa-

tion Act. *Hollingsworth*, 240 Kan. 398. In *Anderson v. Beardmore*, 210 Kan. 343, 502 P.2d 799 (1972), we held that an employee cannot maintain a common-law action for negligence against his employer. However, in the present case, plaintiff contends he was an independent contractor and not an employee and, therefore, the defendant was not entitled to summary judgment as a matter of law.

In support of his contention, the plaintiff relies upon two federal decisions, *Cutler v. United States*, 180 F. Supp. 360 (1960), and *Nebraska Nat. Hotel Co. v. O'Malley*, 63 F. Supp. 26 (1945). In both cases, the federal court held that the musician-bandleader, for federal tax purposes, was an independent contractor rather than an employee. However, as this court has noted, each case will necessarily turn upon its own facts and a review of the circumstances existing in *Nebraska Nat. Hotel* and *Cutler* indicates that those decisions are not relevant to the present case. Both decisions deal with the employment status of bandleaders who were, in turn, responsible for other musicians playing in their bands. In *Cutler*, the court held that, while the plaintiff-bandleader was an independent contractor, the musicians within the band were employees of the bandleader. In the present case, on the other hand, the issue involves the nature of the employment relationship between a single employer and the single musician it has engaged to perform music on designated occasions.

In *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. 97, 689 P.2d 787 (1984), the issue of employee or independent contractor was before this court and we said:

"The primary test used by the courts in determining whether the employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is . . . performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor. *Jones v. City of Dodge City*, 194 Kan. 777, 402 P.2d 108 (1965)." 236 Kan. at 102-03.

In *McCarty v. Great Bend Board of Education*, 195 Kan. 310, 311-12, 403 P.2d 956 (1965), we stated:

"In general, it may be said that an independent contractor is one who, in the

exercise of an independent employment, contracts to do a piece of work according to his own methods and who is subject to his employer's control only as to the end product or final result of his work. [Citation omitted.] On the other hand, an employer's right to direct and control the method and manner of doing the work is the most significant aspect of the employer-employee relationship, although it is not the only factor entitled to consideration. An employer's right to discharge the workman, payment by the hour rather than by the job, and the furnishing of equipment by the employer are also indicia of a master-servant relation."

Each case must be decided on the basis of the facts peculiar to it.

"There can be no absolute rule for determining whether an individual is an independent contractor or an employee. It is the facts and circumstances in each case that determine whether one is an employee or an independent contractor.

. . . .

". . . It is often difficult to determine whether a person is one or the other, since there are elements pertaining to relations which occur without being determinative of the relationship. There is no exact method which may be employed to determine whether one is an employee or an independent contractor." *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. at 102.

Two facts are stressed by the plaintiff in his argument that he was an independent contractor rather than an employee. First, he points out that, under the contract, the defendant could not engage a guest organist or recitalist without prior approval by the plaintiff. Second, plaintiff notes that the defendant did not set aside or pay any employee withholdings from his compensation, and plaintiff's W-4 forms from the defendant indicated that the compensation was non-employee compensation.

However, the fact that an employer does not withhold social security or income tax from an agent's compensation does not alone establish the agent's status as an independent contractor. See *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. at 106. Under the contract between plaintiff and defendant, the church rector was given the authority to determine the time plaintiff performed. The church rector also possessed the authority to make final decisions concerning the amount, nature, and type of music that was to be played. The trial court's findings of fact also indicate that the church's rector possessed the ultimate authority and control over the plaintiff's performances, not only as to the selection of music but also as to the "details of its performance." The defendant paid the plaintiff by the month and also possessed the ability under the contract to discharge

him upon ninety days' notice. Finally, the defendant supplied the instrumentality that was the basis for plaintiff's services—the church organ. In light of these facts, the trial court correctly determined that plaintiff was an employee rather than an independent contractor.

The judgment of the trial court is affirmed.