(81 P.3d 1263)
No. 90,045

LESLIE A. SERVANTEZ, *Appellant*, v. CRAIG J. SHELTON, *Appellee*.

 Opinion
filed January 9, 2004. 

*Roger D. Fincher*, of Bryan, Lykins, Hejtmanek & Fincher, P.A., of Topeka, for appellant.

*Chanda M. Feldkamp*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before GREENE, P.J., LEWIS and MALONE, JJ.

MALONE, J.: Leslie A. Servantez appeals the district court's grant of summary judgment in favor of Craig J. Shelton based on the exclusive remedy provision of the Workers Compensation Act, K.S.A. 44-501 *et seq.*, barring one employee from suing a fellow employee for a job injury. Servantez claims the district court erred because Shelton was off duty and in violation of certain employment policies at the time of Servantez' injury.

The parties agree on the following facts:

"1. The accident at issue occurred on the evening of January 29, 2001, in the adjoining parking lot owned, operated and controlled by Walmart Supercenter, Topeka, Kansas.

"2. At the time of the accident, Leslie A. Servantez (herein Plaintiff) was employed as a customer service manager at Walmart Supercenter, Topeka, Kansas. A customer service manager's duties include supervising the front end cashiers, handling the money, approving checks and generally making sure that the front end of the store runs efficiently.

"3. At the time of the accident, Defendant was employed as a lot guard at Walmart Supercenter, Topeka, Kansas. The lot guards were supervised by the Loss Prevention Department at Walmart. A lot guard's duties include assisting customers in the parking lot, looking for suspicious activity, watching for car break ins and generally maintaining the safety of the parking lot.

"4. Defendant has assisted loss prevention personnel in the apprehension of suspected shoplifters at least once a week while working at Walmart.

"5. When Defendant did assist in the apprehension of shoplifters, he would hear the call over his two-way radio that a shoplifter was about to leave the store, he would go to the door and would stop them, then walk back in and wait for the loss prevention specialist to arrive. Defendant would then stay and be ready to assist if the shoplifter caused any further problems.

"6. Immediately prior to the accident on the evening of January 29, 2001, Defendant clocked out of his regular shift at Walmart at 6:30 p.m. He notified one of the customer service managers that he was going off duty. After Defendant clocked out, he then proceeded to his car in the south parking lot of Walmart.

"7. On the evening of January 29, 2001, immediately prior to the accident, Plaintiff was called to the electronics section of Walmart for a check approval. Once she arrived there she discovered that the individual was attempting to forge another person's signature to purchase over $1,000.00 worth of Walmart merchandise.

"8. At that time Plaintiff called the Walmart Loss Prevention Department for assistance with the check forger. Jordan Mathews, a Walmart loss prevention specialist, was sent to assist Plaintiff. When the individual realized that the Walmart employees had discovered the check was forged she left the scene.

"9. At that time, Mr. Mathews requested the Plaintiff to join him in pursuing the suspect. As they began the pursuit, Mr. Mathews called management over the two-way radio explaining that he and Plaintiff were heading out of the north door pursuing a suspect and to call the Topeka Police Department.

"10. The call was a general call to all Walmart employees who carry two-way radios. Defendant still had his two-way radio in his possession after he had clocked out.

"11. In the meantime, Defendant had gotten into his car in the Walmart parking lot and began driving his car north in the parking lot driving lane directly in front of the Walmart building. While in his car in front of the Walmart building, Defendant heard the call over his two-way radio regarding the pursuit of the suspect leaving the building.

"12. At all times between clocking out and the occurrence of the accident, Defendant was on Walmart's premises.

"13. The suspect exited the Walmart store on the north side, followed by Mr. Mathews and Plaintiff. Mr. Mathews and Plaintiff caught up to and apprehended the suspect in the northeast portion of the Walmart parking lot as she reached her car.

"14. Defendant had seen Mr. Mathews pursuing the suspect through the northeast portion of the Walmart parking lot. He then drove his car to where Mr. Mathews, Plaintiff and the suspect were located to assist Mr. Mathews with the suspect.

"15. Plaintiff was standing to the east of Mr. Mathews and the suspect. Plaintiff claims that as Defendant drove up to the location Defendant hit her from behind with his car. She claims that some portion of Defendant's car, which was being driven from the south or southeast, hit her right arm while she was facing north.

"16. Plaintiff filed a workers compensation claim for this injury.

"17. Although the claim is still pending, Walmart does not dispute that Plaintiff was injured while at work and it has already paid workers compensation benefits, including medical bills."

Additionally, under Wal-Mart's policies and procedures, a lot guard is not authorized to perform any work or engage in any activities on behalf of Wal-Mart when off duty. Also, a lot guard is prohibited from using a personal vehicle in any activity on behalf of Wal-Mart, and all employees are prohibited from leaving Wal-

Mart with a Wal-Mart two-way radio. Finally, Wal-Mart never reprimanded Shelton for anything relating to this incident, and he worked for Wal-Mart for over a year after the incident.

Servantez filed a personal injury lawsuit against Shelton in district court. Shelton filed a motion for summary judgment, alleging he was Servantez' fellow employee and that under the exclusive remedy provision of the Workers Compensation Act, her claim for negligence was barred. The district court granted summary judgment in favor of Shelton, finding Shelton was acting in good faith under the scope of his employment at the time of the accident.

Servantez timely filed this appeal.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002).

Servantez claims that material disputed facts should have precluded summary judgment in this case. As the district court determined, however, the facts presented in the motion were essentially uncontroverted, and any disputed facts that existed were considered in the light most favorable to Servantez. We conclude that the facts are sufficiently uncontroverted to permit summary judgment and that only the application of the facts to the law is in dispute.

K.S.A. 44-501(g) states: "It is the intent of the legislature that the workers compensation act shall be liberally construed for the purpose of bringing employers and employees within the provisions of the act to provide the protections of the workers compensation act to both." K.S.A. 44-501(b) provides in pertinent part that "no employer, or other employee of such employer, shall be liable

for any injury for which compensation is recoverable under the workers compensation act."

In *Fugit, Administratrix v. United Beechcraft, Inc,* 222 Kan. 312, 314, 564 P.2d 521 (1977), the court noted that under the exclusive remedy provision,

"the well established rule is that if a workman can recover benefits from an employer under the workmen's compensation act for an injury, he cannot maintain a common-law action against that employer for damages based on a theory of negligence. [Citations omitted.] This exclusive remedy provision also bars a common-law action against another employee of such an employer. [Citation omitted.]"

However, in *Wells v. Anderson,* 8 Kan. App. 2d 431, 433, 659 P.2d 833, *rev. denied* 233 Kan. 1093 (1983), the court concluded "that mere co-employee status is not sufficient for immunity. There must be some connection between the defendant's acts and his employment for immunity to attach." See *Bay v. Funk,* 19 Kan. App. 2d 440, 442, 871 P.2d 268 (1994). The *Wells* court stated that the test to determine whether immunity applies is whether the coemployee "would have been entitled to receive compensation had he been injured in the same accident." 8 Kan. App. 2d at 434.

Thus, the test to determine whether Shelton was immune from the lawsuit is whether Shelton himself would have been entitled to receive compensation had he been injured in the same accident. Servantez argues that Shelton would not have been entitled to receive compensation since he was off duty and in violation of certain employment policies at the time of the accident. Thus, according to Servantez, the injury did not arise "out of and in the course of Shelton's employment."

Servantez relies heavily on *Wells* to support her position. In *Wells,* the plaintiff and defendant were coemployees of a service station. The defendant drove his own vehicle into the service bay to change the antifreeze while the plaintiff was working on a customer's truck. The defendant alternated between changing the antifreeze in his own vehicle and pumping gas for the station. The defendant testified that when he was working on his own car, he could not always see what was going on in front of the station. When the defendant finished working on his car and started it, the

car was in gear and hit the plaintiff, pinning him between the defendant's car and the customer's truck. The employer's official policy was to forbid employees from working on their own vehicles on company time. However, the service station manager testified it was the custom and practice of the station's employees to work on their own vehicles as long as it did not interfere with company business. The plaintiff was awarded workers compensation benefits for his injuries.

The *Wells* court determined summary judgment was improper because the record did not conclusively establish "whether, if defendant had been injured in the same accident, his injuries would be deemed to have arisen out of and in the course of his employment." 8 Kan. App. 2d at 434. The *Wells* court explained that "if an employee is performing work which has been forbidden, as distinguished from doing his work in a forbidden manner, he is not acting in the course of his employment. *Hoover v. Ehrsam Company*, 218 Kan. 662, 544 P.2d 1366 (1976)." 8 Kan. App. 2d at 434.

In *Hoover v. Ehrsam Company*, 218 Kan. 662, 544 P.2d 1366 (1976), the employee had performed manual labor for many years for the company, but had sustained various physical injuries. Therefore, the company changed his job to a supervisor and forbade him from doing any manual labor. The employee was injured while using a jack bar to help another employee unjam a sheet metal press.

The *Hoover* court recognized the rule that any activity undertaken by the employee *in good faith* to advance the employer's interests is generally within the course of employment. 218 Kan. at 666. However, the court found that, in attempting to release the jammed press, the employee "was doing a prohibited act and therefore his activity at the time of his injury was outside the scope of his employment." 218 Kan. at 667.

We believe this case is distinguishable from *Wells* and *Hoover*. As Shelton asserts, when he stopped to help Matthews, he was merely performing one of his job duties. The uncontroverted evidence established that when a call about a shoplifter went out over the radio, Shelton would wait for the shoplifter to come out and then help to apprehend the shoplifter. He had assisted loss pre-

vention personnel in apprehending suspected shoplifters at least once a week. Thus, the accident was causally connected to Shelton's specific job duties.

Further, as addressed in *Hoover*, even if Shelton's actions had not been a part of his duties, his act in seeing if Matthews needed assistance was a good faith effort to advance Wal-Mart's interests in stopping shoplifters and making sure its loss prevention specialists were not harmed. Shelton's actions were entirely for Wal-Mart's benefit. In *Wells*, the employee's actions in working on his personal car benefitted only the employee.

Although Shelton had clocked out from his workday, it is significant that he had not left the Wal-Mart premises before the incident occurred. Under the "going and coming" rule, an employee is not acting in the course of employment "while the employee is on the way to assume the duties of employment or after leaving such duties." K.S.A. 44-508(f). However, this rule does not apply when the employee is still on the employer's premises at the time of the injury. K.S.A. 44-508(f); see *Brobst v. Brighton Place North,* 24 Kan. App. 2d 766, 773, 955 P.2d 1315 (1997). As the district court found:

"If [Shelton] had clocked out, gotten in his car and left the premises of his employer by crossing the street in front of Walmart, heard the call over the two-way radio and then turned around to help, there may exist a genuine issue of material fact as to whether [Shelton] was acting under the scope of employment. No such issue exists here."

Shelton's violation of certain employment policies was incidental to the fact that his overall conduct was within the course of his duties. Shelton was not performing a forbidden act at the time of Servantez' injury. At best, he was doing his work in a prohibited manner. The fact that Shelton was never reprimanded by Wal-Mart supports this conclusion.

Here, the record conclusively establishes that Shelton would have been entitled to receive workers compensation had he been injured in this accident. Shelton's actions were specifically related to his job duties and were performed in good faith while on Wal-Mart premises. As the district court noted:

"A thorough review of the facts indicates that [Shelton] not only acted in the capacity that he believed were the duties of his employment, but also acted in good faith for the benefit of Walmart. In fact, had the suspected check forger escaped the premises and it became known that [Shelton] was in the general escape area and was aware of the pursuit one has to wonder what the consequences of a lot guard lying idle in that situation would be."

Thus, under the *Wells* test, Servantez and Shelton were fellow employees at the time of Servantez' injury.

The uncontroverted evidence supports the conclusion that Servantez' lawsuit against Shelton was barred by the exclusive remedy provision of the Workers Compensation Act. Thus, the district court did not err in granting summary judgment in favor of Shelton.

Affirmed.